[No. 279. Decided January 25, 1892.]

# H. A. SEARS, *Respondent*, v. F. L. STINSON, *Appellant*.

## VENDOR AND VENDEE—QUANTITY OF LAND—MISREPRESENTATION—DAMAGES.

Where a vendor sold certain lots which he represented, and which a recorde l plat thereof showed, to be one hundred feet in depth, when in fact the title to a strip of land sixty feet in depth running across said lots was not in the vendor, the purchaser may maintain an action for damages, whether the vendor knew such representations were true or false.

In such an action the measure of damages is the difference between the contract price and the value of the land actually sold at the time of sale.

*Appeal from Superior Court, King County.*

Action by H. A. Sears against F. L. Stinson for damages for breach of contract to convey certain land. Judgment for plaintiff, and defendant appeals.

*Stratton, Lewis & Gilman,* for appellant.

*White & Munday,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—Plaintiff purchased of defendant block three of Bellevue addition to the city of Seattle, consisting of twenty-two lots, for the sum of two thousand dollars, receiving therefor a warranty deed. The lots were represented on the plat which defendant exhibited to plaintiff as being twenty-five feet wide and one hundred feet in depth. Some time after the purchase, plaintiff in having the block surveyed discovered that defendant did not have title to a strip of land about sixty feet in width running across the north side of said block, owing to some mistake in the original plat. Or, in other words, that the eastern tier of lots were short about sixty feet. Upon a failure to get a

satisfactory settlement with defendant, plaintiff brought his action for damages, alleging that the defendant had represented to him that he was the owner of all of said block three; that it contained twenty-two lots, with a width of twenty-five feet and a depth of one hundred feet, and also represented that certain of the lots fronted on a street called "Boz" street; that plaintiff relied upon such representations, and that such representations were made by the defendant to induce the plaintiff to purchase all of said block, and that plaintiff, relying upon such representations, did purchase, etc.; that said representations were false and untrue in that defendant was not the owner and had no title to a portion of the block described, and that there was no such street as Boz street. Defendant denies each and every of the allegations of the complaint, excepting that he represented that he was the owner of a certain tract of land in said King county known as block three of said Bellevue addition. Upon the issues thus presented the parties went to trial, and a verdict of one thousand dollars was returned for plaintiff. Judgment was entered, and an appeal taken to this court.

The principal contention of the defendant is, that to support an action of this kind it must be alleged and proven, not only that the representations made and relied upon by the purchaser are untrue, but that they must have been known to have been untrue by the vendor. Or, to use the words of counsel, "That the act or omission by which the undue advantage is obtained was willful, and that in absence of fraud on the part of the vendor the purchaser must resort to a court of equity to obtain a rescission of his contract." While it cannot be disputed that a great deal of authority can be marshaled which will support that theory, it is also true that the theory of respondent is equally sustained by authority, and we think by the better reasoning. There is no doubt but that the plaintiff would

be entitled to the equitable relief of a rescission of the contract, if he desire it; but there is no reason either why he could not compel the party who has sold him more than he can deliver to return the excess payment; and that is simply what it amounts to. It is not a case in deceit, and a different rule of damage will apply altogether. There is no deceit alleged. It is an action under the statute, where the complaint is a plain and concise statement of facts constituting a cause of action. In this case the statement is, that by reason of false representations made by defendant, the plaintiff paid for more land than he received. There certainly can be nothing inequitable in this procedure if a just measure of damages is employed. The purchaser pays for what he gets, the vendor gets pay for what he has to sell; this is all he is entitled to, let his mistake be ever so innocent. It is exactly upon the same principle that a purchaser may enforce specific performance of the part of the contract which can be performed, and receive compensation in damages for the balance. In one case he invokes the aid of a court of equity to enforce the performance of the contract, and the court having obtained jurisdiction of the case for that purpose will, instead of putting the parties to the expense of seeking another forum, proceed to a determination and adjustment of all their rights and award the damages, which is, strictly speaking, a province of a court of law. But in this case the contract, so far as it can be enforced, is already performed, and there is nothing to give a court of equity jurisdiction. Damages for the balance is all that is left. We cannot agree with appellant that the cases cited by respondent do not sustain respondent's theory, or at least a great many of the cases. *Lynch v. Mercantile Trust Co.*, 18 Fed. Rep. 486, is not, as stated by appellant, a case of rescission of contract, but on the contrary the defendant offered to rescind the contract and pay back the purchase money received, which the plaintiff

declined and brought his action for damages. That case was almost identical in all its particulars with the one at bar. Sale was made upon the representations of a real estate dealer in whose hands the property had been placed for sale by the owner, the defendant in the action. The agent Brown went to the applicant, and showed the block purchased, representing that it included all the land lying between certain fences as pointed out on three sides and extending to the river, and that the frontage was six hundred feet. The applicant, by survey, found that the frontage between the fences was six hundred feet, and relying upon the representations of Brown, made the purchase. It afterwards developed that the true boundary of the tract was only four hundred and seventy feet frontage, and that all the land pointed out between the fences did not belong to the defendant. And the court said:

"A purchaser trusts in the owner's statements, and the law will assume that the owner knows his own property, and truly represents it. So, if an injury results from the statement of a material fact which influences the sale, and not from the statement of the opinion or belief of the vendor, an action will lie if the representation is false, and it is not material whether the vendor knew to be false what was stated."

It was also held that the defendant, in placing the property in the agent's hands for sale, and by ratifying his acts and receiving the money paid according to the contract, became responsible for the misrepresentation; and in conclusion the court says:

"The plaintiffs were not required, after the deed had been executed, to accept the offer of the defendant to refund the money received and declare the contract off. They had the option to allow the sale to stand, and by an action at law to recover for the injury sustained."

Neither can it be said, we think, that the court rests its decision chiefly on *Evans v. Edmonds,* 13 C. B. 777. It is

true that the rule laid down by *Evans v. Edmonds* falls within the second class of cases mentioned by Mr. Pomeroy, viz., "The making an untrue statement, of the truth of which the party of course has no knowledge, and which he does not even believe to be true, is tantamount to the making of a statement which the party knows to be untrue," and might not have been pertinent to the case the court was trying; but it also quotes the language of the court in *Ainslie v. Medlycott*, 9 Vesey, Jr., 21, where the court used this language:

"If, without knowing that it is not true, he takes upon himself to make a representation to another, upon the faith of which that other acts, no doubt he is bound, though his mistake was perfectly innocent."

And whether or not the court lacked discrimination in the cases cited, there can be no question as to what it actually decided. In the case at bar the boundaries were pointed out upon the plat to which the purchaser was referred. The plat represented the lots to be one hundred feet in depth; the recorded plat is the same; on the face of the earth everything was regular, and everything tended to mislead the purchaser. It is true he employed an attorney to look up the title, and the attorney was also deceived. But that is no reason why a grantor should be allowed to retain the fruits of his misrepresentations. On such a theory Hanford, the original grantor, who, by a careless mistake in laying out the addition, laid it out on land which he did not own, and who sold it through the representations of a plat which was regular on its face, could retain the fruits of his mistake because the vendees did not discover it before they purchased. According to the testimony of the defendant it will be seen, either that absolute reliance was placed on the plat, or that the defendant was willfully trying to mislead the purchaser.

Cross-examination of Mr. Stinson:

"Q. Then you made no representation whatever to Mr. Sears about the size of the lots or blocks? A. Not to my knowledge; no.

"Q. Then he did not ask you anything about the size of the lots or blocks? A. Yes, sir.

"Q. You kept quiet? A. No, sir; I referred him to the abstract and the plat. I told him the plat said they were 25 by 100.

"Q. You told him they were 25 by 100, did you? A. I told him the plat said so.

"Q. You always said the plat said so, referring him to the plat? Didn't you say to him the lots were 25 by 100? A. No, sir.

"Q. You said the lots were 25 by 100, according to the plat? A. I referred him entirely to the plat. I knew nothing about the lots myself."

It can easily be understood that if the defendant had told him a dozen times in positive terms that the lots were one hundred feet in depth, it would not have tended to mislead him as much as to refer him to the plat, which is supposed to truthfully represent the lots, and which supplies the information ordinarily relied upon in the purchase of town lots.

*Davis v. Nuzum*, 72 Wis. 439 (40 N. W. Rep. 497), cannot be distinguished in principle from this case, so far as the liability of the grantor is concerned. Appellant seeks to distinguish *Doyle v. Hord*, 67 Tex. 621 (4 S. W. Rep. 241); *Tyler v. Anderson*, 106 Ind. 185 (6 N. E. Rep. 600); *Smith v. Kirkpatrick*, 79 Ga. 410 (7 S. E. Rep. 258), cited by respondent, by showing that they were all cases where land had been sold at a stipulated price per acre, and there proving to be fewer acres than had been supposed, an abatement of the total estimated price was allowed in actions for the balance of purchase price. There can be no difference in principle, so far as maintaining any dis-

tinction between cases where the mistake was willful and where it was innocent, from the case at bar. In those cases the purchaser did not get the number of acres he contracted for. In this case the purchaser did not get the number of feet he contracted for. The essential cause of complaint in all the cases is that the purchaser, by reason of the misrepresentation of the grantor, did not get the amount of land he paid for. It might or might not be that in one case it would be more difficult to ascertain the damages than in the other, but certainly that could not in any manner affect or change the responsibility. This case, we think, also falls within the decision of *Hanson v. Tompkins*, decided by this court, reported in 2 Wash. 508 (27 Pac. Rep. 73). Without further reviewing the case, we think most of the authorities cited by respondent, with many others, sustain this view; and as it accords with our view of what is right and fair, we adopt it.

We think the instruction of the court on this branch of the law was substantially correct. As to the measure of damages in a case of this kind where no fraud is alleged, we will lay down the following rule: The jury, assuming the value of the whole tract to be the contract price, must find how much less than the contract price the land was worth at the time of the sale by reason of the deficiency; and the amount will be the plaintiff's damages. For instance, if in this case that portion of the block which was rightfully conveyed was found to be worth only one thousand dollars, taking as a basis of estimate the value of the whole block at two thousand dollars, the plaintiff's damages will be one thousand dollars. While no rule can be announced which will guarantee a perfectly equitable adjustment in all cases, we think the foregoing is sustained by authority, that it administers substantial justice, and we therefore endorse it. And we think the instruction of the court on this subject substantially announced the rule laid

down above.    The instruction was somewhat lengthy on this point, with some repetition; and it might be possible that some expressions used would admit of a little broader rule of damages, but considering it altogether, it is pretty certain that the jury was not misled by the court; and the hypothetical question as to the value, which was asked the witnesses, indicates that the damages were proven and that the estimate of the jury was made upon the proper theory of the case.    So far as the instructions asked for by the defendant are concerned, those that had not been already substantially given by the court did not, in our opinion, state the law, and were properly refused.

Finding no substantial error, the judgment is affirmed.

ANDERS, C. J., and STILES, HOYT and SCOTT, JJ., concur.