[No. 4112.    Decided September 3, 1902.]

NORTHWESTERN STEAMSHIP COMPANY, *Appellant*, v. DEXTER HORTON & COMPANY, BANKERS, *et al.*, *Respondents*.

29  565<br>e38  429

DECEIT — REPRESENTATIONS — SCIENTER — PLEADING.

In an action to recover damages for false representations as to the solvency of a third person, the complaint is demurrable, when it avers that plaintiff was induced to make sale of a steamship upon positive representations by defendants of the solvency of the purchaser, that plaintiff had no other knowledge than that obtained from such representations, that the representations

were false and the plaintiff injured thereby, but no averment is made that the defendants had knowledge of the falsity of their representations, nor that the statements were made recklessly, without knowledge of their truth or falsity, nor specific facts stated from which fraudulent intent could be inferred.

Appeal from Superior Court, King County.—Hon. GEORGE MEADE EMORY, Judge. Affirmed.

*Greene & Griffiths* and *Piles, Donworth & Howe,* for appellant.

*Peters & Powell,* for respondents.

The opinion of the court was delivered by

REAVIS, C. J.—Action to recover damages alleged by plaintiff for false representations by defendants of the solvency of a third person. The plaintiff is a corporation, and owned a steamship. Defendant Latimer is the president of the plaintiff corporation, and is also manager of the defendant bank, a corporation. The complaint alleges, in substance, that the estate of one Jackson was a stockholder, owning a majority of the capital stock in plaintiff corporation, and that said estate was indebted to the defendant bank in a large sum, and that the bank held the stock owned by said estate as collateral security for the payment of said indebtedness, and that said estate was otherwise unable to pay such indebtedness; that the defendants desired that plaintiff sell the said steamship named "George E. Starr" to one Shirk for the sum of about $12,000, so that the capital stock, so held by defendant bank as collateral security, should be made valuable, and the bank receive the proceeds of such sale, to be applied in payment of the indebtedness of said estate to the bank; that the plaintiff was unwilling to sell the steamship, and to credit a large portion of the purchase price to

Shirk, without security for the payment thereof; that thereupon, in order to induce said sale to Shirk, defendants made representations as to the solvency and ability of said Shirk to pay such purchase price. The allegations relative to such inducement and representations are then stated as follows:

"That thereupon, and in order to obviate and do away with every such objection and refusal, said defendants and each of them positively, at or about the time of the execution and delivery of said paper writings, and before such execution and delivery, represented to and assured this plaintiff that said Shirk was of high financial responsibility and of great wealth, and owned and possessed real and personal estate of great value, to-wit, of the value of eight hundred thousand dollars and upwards, and that they knew the said Shirk to be a man of great means and amply good for said sums, and that therefore said paper writings, each with his signature thereto and his delivery thereof, were and each of them was adequate and sufficient security and guaranty that all things and matters therein agreed by him to be performed or paid, would be performed and paid as therein by him agreed, and thereupon by said representations and assurances this plaintiff, having no knowledge nor information to the contrary, and reasonably relying in good faith upon said representations and assurances as true, was then induced to believe and did believe that said paper writings with the signature of said Shirk thereto and with his delivery thereof to plaintiff were so adequate and sufficient, and so relying and believing, on or about the 7th day of February, 1898, consummated said sale to said Shirk and delivered to said Shirk said agreement, and put said Shirk in possession of said vessel, etc., as such purchaser, and accepted from said Shirk said agreement and said promissory note in evidence of said sale: Whereas, in truth and in fact, said representations and assurances and every one of them was then and at all times false and untrue in this, that the said Shirk then and at all times was of very little and insufficient

or no financial responsibility in the premises, and was not a man of any wealth, and was of little or no means, and was insolvent, and said promissory note which was by him signed and delivered to this plaintiff was therefore of no security and guaranty at all to this plaintiff for the payment or performance by said Shirk of any purchase price of money or anything therein agreed by him to be paid or performed, and was wholly uncollectible and valueless."

Damages are demanded for the false representations. A general demurrer was sustained to the complaint, and, the plaintiff standing on the complaint, judgment was given for defendants.

The error assigned is the ruling upon the demurrer. The objection to the complaint is that no fraud or deceit is charged against defendants. There does not seem to be much conflict over the legal principles controlling the action. The general rule is very well stated in 14 Am. & Eng. Enc. Law (2d ed.), 85:

"And the general rule is that a false representation of a material fact, though it may be made with the intention that it shall be acted upon by the person to whom it is made, and though it may be acted upon by him to his damage, is not a fraudulent representation, unless it is made with an actual fraudulent intent, or under circumstances from which a fraudulent intent may be implied. A fraudulent intent, as will be shown in the course of this section, includes knowledge that the representation is false, and an intent that it shall deceive. The reasons upon which this rule is based are that 'in contemplation of law there can be no fraud without moral delinquency;' or, in other words, that 'there is no actual fraud which is not also moral fraud,' and that a party may protect himself, if he sees fit to do so, by a warranty which will cover innocent as well as fraudulent misrepresentations."

And further, of the action of deceit, it is said (Id., 86):

"By the overwhelming weight of authority, in order to render a person liable for false representations in an action of deceit, it must be shown that he made the representations *scienter*,—that is, either with actual knowledge of their falsity, or under such circumstances that the law will imply or impute knowledge, as in the case of reckless statements, without knowledge whether they are true or false, representations made for a fraudulent purpose, though without actual knowledge of their falsity, and representations accompanied by a false assumption of knowledge, express or implied. As a general rule an action of deceit cannot be maintained if a false representation is made in the honest belief that it is true."

The question here is whether the *scienter* is alleged in the complaint. Of this knowledge the rule is stated as follows:

"As a general rule, false representations not being fraudulent or actionable, unless made with knowledge of their falsity, or stated as the truth when the person has no knowledge on the subject, *scienter* must be expressly alleged in a declaration or complaint for false representation and deceit, or specific allegations must be used which sufficiently import knowledge." 8 Enc. Pl. & Pr., 901.

And it seems to be well supported by the authority there noted. It will be observed the complaint avers that plaintiff was induced to make the sale of the steamship upon positive representations of the solvency of Shirk by the defendants, and that plaintiff had no other knowledge than thus obtained; that such representations were false, and plaintiff was injured thereby. It is apparent there is no direct allegation of deceit or moral fraud of the defendants. Are there specific allegations which charged knowledge of the falsity of the representations made to the defendants? For it is true that where specific facts are stated from which fraud necessarily

follows the *scienter* may be inferred. However, if the false representations were not intended to deceive, or not made recklessly, without knowledge of their truth or falsity, the moral fraud, which is the gist of the action, is not charged. It is well to keep in view the distinction between actions upon false warranties, and also suits for rescission and relief against mistakes in equity and actions for deceit. In the former the *scienter* may be immaterial, in the latter it is always material.

"In the requirement of a *scienter* deceit differs from breach of warranty. If a representation amounts to a warranty, an action of assumpsit for a breach of warranty, or an action on the case for a false warranty, express or implied, may be maintained, whether the defendant knew the representation was false or not. Therefore, when it is decided in any case that knowledge of the falsity of a representation is necessary to entitle a person to maintain an action for damages, care should be taken to ascertain whether the action is for deceit or for breach of warranty or false warranty, before the decision is relied upon as authority." 14 Am. & Eng. Enc. Law (2d ed.), 87.

This distinction is mentioned in *Sears v. Stinson,* 3 Wash. 615 (29 Pac. 205). The allegation that representations made by defendants relative to the property possessed by Shirk were false are not entirely inconsistent with the idea of moral innocence. There are many elements considered in forming a conclusion when the solvency of one is in question. It must necessarily involve opinion, and cannot be subjected ordinarily to precise facts.

"The rule that there must be an intention to deceive applies with full force, if not with peculiar force, to false representations as to the solvency or credit of another." 14 Am. & Eng. Enc. Law (2d ed.), 103.

However, where such representations are made positively or recklessly, and without knowledge, by one to the injury of another, the fraud consists in the false statement that one has such knowledge. The objection to the complaint seems well taken.

The judgment is affirmed.

HADLEY, ANDERS, WHITE, DUNBAR and MOUNT, JJ., concur.