[No. 5235. Decided April 20, 1905.]

JOHN LAWSON *et al., Respondents,* v. W. H. VERNON *et al., Appellants.*[1]

VENDOR AND PURCHASER—FALSE REPRESENTATIONS—ACTION FOR DAMAGES—MISTAKE—EXHIBITING WRONG PROPERTY. Where a vendee relied upon false representations of the vendor in pointing out certain lots as the ones offered for sale, he can recover his damages, regardless of the vendor's good faith, and although the misrepresentations arose from mistake.

SAME—IMPROVEMENTS ON WRONG PROPERTY—MEASURE OF DAMAGES. Where the purchaser of certain lots took possession of the wrong property, pointed out to him by his vendor as the lots sold to him, and made improvements before discovering his error, the measure of his damages is the sum that will compensate him for the labor and expense to which he was put by reason of the mistake, regardless of whether the lots purchased were more valuable than those shown and occupied.

SAME—DILIGENCE—RIGHT TO RELY ON REPRESENTATIONS. Where the location of lots on the outskirts of a city is obscured by brush and trees, and the stakes cannot be found, the vendee has a right to rely on the representations of the owner in pointing out certain lots as the ones offered for sale.

Appeal from a judgment of the superior court for King county, Linn, J., entered November 30, 1903, upon the verdict of a jury rendered in favor of the plaintiffs in an action for damages for false representations. Affirmed.

[1] Reported in 80 Pac. 559.

*George E. De Steiguer,* for appellants.

*J. P. Wall* and *Root, Palmer & Brown,* for respondents.

FULLERTON, J.—The record discloses that, in the early part of July, 1900, the appellants, who were real estate dealers, in the city of Ballard, approached the respondent John Lawson and proffered to sell to him four certain lots, then owned by the appellant Lee, known and described as lots 26, 27, 28, and 29, in Block 9, in Ballard Park Addition to the city of Ballard. The lots were on the outskirts of the city of Ballard in an unimproved part of the city, and, together with the surrounding property, were overgrown with trees and brush, and overlaid with logs, so that the stakes originally put in to mark the lots and blocks could not be found. During the negotiations between the parties, the appellant Vernon took the respondent John Lawson to the place near where the lots were located, and pointed out to the respondent certain lots, which he said were the lots of his co-appellant and the lots they purposed selling, but which, in fact, were lots owned by other persons, and some one hundred and sixty feet west of the lots owned by Lee. On returning, the respondent Lawson agreed to purchase the lots, and thereupon the appellant Lee executed a deed to him for the lots above described, assuring him that the lots pointed out to him by Vernon were the lots described in the deed. The deed was executed and delivered sometime in July, 1900, and a few weeks thereafter the respondents entered into possession of the lots pointed out by Vernon, and, between that time and the early part of the year 1903, cleared and fenced the same, dug a well thereon, set out thereon a number of fruit trees, and commenced the erection of a dwelling house.

About the time they commenced building the house,

some of their neighbors told them that they were not upon the lots their deed described. The respondents thereupon took steps to ascertain the true location of the lots purchased by them, and finding they were upon other lots, they entered upon the lots actually conveyed, abandoning the lots first settled upon, together with the improvements they had placed on the same. There was evidence tending to show that the lots actually conveyed lay better, and were more valuable, than the lots the respondents claim were pointed out to them. There was testimony on the part of the appellants to the effect that the lots sold were the lots actually pointed out by Vernon, and the bill of exceptions, which, however, does not purport to contain all of the evidence, fails to show any motive on the part of appellants for pointing out other lots than the ones they had for sale and actually sold. It fails to show, also, what knowledge Vernon had of the location of the lots at the time he undertook to point them out to the respondents.

The appellants requested the court to give the jury the following instructions:

"(1) The claim of the plaintiffs in this case is that they purchased from the defendants certain real estate described in the complaint, but that the defendants showed certain other property to the plaintiffs and falsely, deceitfully, and fraudulently informed the plaintiffs that such other lots were in fact the lots which plaintiffs were about to buy. Before you can find for the plaintiffs in this action, you must find that in fact such representations were made, that they were false, that they were known by the defendants to be false, or were not made in good faith by the defendants, and that the plaintiffs relied upon the same.

"(2) If you find that representations as to the location of the property were made which were not correct, but that the defendants were acting in good faith in making

such representations, then you must find a verdict for the defendants.

"(5) If you find that the location of the lots claimed to have been sold by defendants to the plaintiffs could have been readily ascertained by the plaintiffs, and that any mistake as to their location arose from the failure of the plaintiffs to avail themselves of any means readily accessible to them, then they cannot recover from the defendants in this action.

"(6) The court instructs you that, if the plaintiffs are entitled to recover anything from the defendants in this action, the measure of damage and the amount of recovery to be determined by your verdict is the difference in value between the lots of land which plaintiffs claimed that the defendants pointed out to the plaintiffs as the land they were buying and the land actually described in the deed given to the plaintiffs. If the land so described in the deed was more valuable than the land pointed out, and if other facts exist entitling the plaintiffs to a verdict, then the amount of your verdict should be the amount in which the value of the land so pointed out exceeds the land actually described in the deed. On the other hand, if the land described in the deed was of the same value as the land so alleged to have been pointed out to the plaintiffs, or was more valuable than the land so pointed out to the plaintiffs, then the plaintiffs would not be damaged by any mistake or misrepresentation as to the location of said land, and you should render a verdict for the defendants herein.

"(7) If you render a verdict for the plaintiffs herein, you cannot take into consideration, in fixing the amount of such verdict, any work done or improvements made upon the property which plaintiffs claim was pointed out to them by the defendants, as any such work or improvements form too remote or speculative an element to be taken into consideration in a case of this kind."

The court refused to give the requested instructions, but gave the following:

"(1) If you believe, from the evidence, that the defendants, or either of them, prior to the sale of the prop-

erty, pointed out to the plaintiffs, or to either one of them, certain lands other than the lands described in the deed given by the defendants to the plaintiffs, and that the plaintiffs relied upon the information thus given, and went to trouble and expense and work improving the lands pointed out to them, and which they believed to be the property which they bought, then your verdict must be for the plaintiffs, and in such sum as you believe they were damaged, if they suffered any damage.

"(2)   If you find from the evidence, as a matter of fact, that prior to the date of sale the defendant Vernon pointed out certain lands to one of the plaintiffs which were not as a matter of fact the lots conveyed, and that plaintiffs believed they were the same lands, and were told by the said Vernon that they were the same lands, that plaintiffs are entitled to recover any damages which they sustained by reason of such misinformation, even if the said Vernon did not purposely mislead them; in other words, if the defendant Vernon made a mistake and pointed out the wrong property, even if his mistake were unintentional, yet he and his partner must be held for any pecuniary damage said mistake may have caused the plaintiff.

"(3)   The court permitted certain evidence to be introduced as to the nature and value of the property which was actually described in the deed, and upon which plaintiffs were living.   That evidence was not admitted for the purpose of proving in this suit any counterclaim or any justification, but merely upon the credibility of witnesses and the likelihood of certain transactions having or not having taken place.   If you find that the defendants, or either of them, prior to the sale of the property, told the plaintiffs they would sell him the lots which he subsequently improved, and pointed out said lots to him and that plaintiffs acting upon such representations and relying thereon, improved the said property, they are entitled to recover damages, regardless of the nature or value of the lots described in the deeds, and the value of said lots has nothing to do with the question of the amount of damages which should be awarded.

"(4) If you find that the plaintiffs are entitled to damages in this cause, you must award them such amount as in your opinion would compensate them for the time, labor, trouble and expense to which they were put by reason of the result of such a mistake, and for any loss sustained by the plaintiffs because of their incurring such expenditure of time and money."

The jury returned a verdict in favor of the respondents for the sum of $250, and a judgment was entered in their favor, from which this appeal is taken.

The appellant first assigns that the court erred in giving the second of the instructions given, and in refusing to give the first and second of the requested instructions. They argue that this is an action for false representations or deceit, and that a plaintiff, to recover in such an action, must not only show that the representations relied upon were false, but that the defendant knew them to be false at the time he made them; and the charge of the court in this case, he argues further, leaves out the elements of knowledge on the part of the defendants.

It seems to be the rule announced by the majority of the courts that representations, on which another relies to his injury, to be actionable, must be fraudulent as well as false. But the courts announcing this rule have taken somewhat advanced grounds on the question as to what constitutes fraudulent representations. The prevailing doctrine is that, if a person states as true, as of his own knowledge, material facts susceptible of knowledge, to one who relies and acts thereon to his injury, he cannot defeat recovery by showing that he did not know that his representations were false, or that he believed them to be true. The falsity and fraud consists in representing that to be true which he did not know to be true. *Cottrill v. Krum,* 18 Am. St. 549, note p. 560; 4 Sutherland, Damages (3d ed.). § 1169.

This court has gone, perhaps, even a step beyond this rule, where the false representations were made with reference to land conveyed. In *Hanson v. Tompkins*, 2 Wash. 508, 27 Pac. 73, the grantors represented that the tract of land described in the deed of conveyance contained thirty-six and one-half acres, whereas in fact it contained but twenty-six and one-half acres. It was held error to instruct the jury that the grantee could not recover damages suffered by him because of the falsity of the representation unless the jury believed that the grantor made them with the intent to deceive; and that the grantor was not liable if he was mistaken as to the number of acres the tract contained and believed what he said concerning it to be true. *Arguendo*, the court said:

"If the defendants relied upon the representations of the plaintiff, and were led to believe by such representations that lot 2 contained 36½ acres, when in fact it only contained 26½ acres, and were induced by such representations to purchase said lot as a lot of 36½ acres, it makes no difference whether plaintiff knew such representations to be false or not, he is liable. If he knew the lot did not contain 36½ acres, and represented to defendants that it did, he would be guilty of fraud and deceit; but if he did not know it, and believed that the representations he made were true, and defendants, acting upon such representations, were damaged because it eventuated that they were not true, the liability of the plaintiff would be the same. In neither case will he be allowed to retain the benefit flowing from his misrepresentation. Mr. Justice Story thus states the rule: 'Whether a party thus misrepresenting a material fact knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial; for the affirmation of what one does not know or believe to be true is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false.' "

In *Sears v. Stinson*, 3 Wash. 615, 29 Pac. 205, the

grantor represented to the grantee that the lots described in the deed of conveyance were one hundred feet in depth, as shown upon a recorded plat, when in fact they were but fifty feet in depth. It was held that the grantee could recover for the false representations, notwithstanding the grantor may not have known that his representations were false at the time he made them; the court remarking that the effect upon the grantee was the same whether the representations were true or false.

These cases sustain the instruction complained of in the case at bar, for it can make no difference in principle whether the false representation concerns the quantity of land conveyed, or the precise location of the land conveyed. Each is a representation of a material fact, calculated to deceive the grantee and induce him to act when he otherwise would not act, and there would be no reason in holding that the one is actionable when innocently made, while the other is not.

The appellant, however, contends that these cases have been overruled by the later case of *Northwestern S. S. Co. v. Dexter Horton & Co.*, 29 Wash. 565, 70 Pac. 59. That case holds that false representations as to the solvency of a third person are not actionable unless the representations are made with knowledge of their falsity, or are made positively and recklessly without knowledge whether they are true or false. The writer confesses that he had difficulty in reconciling the decision in this case with the decisions in the earlier cases, and for that reason did not concur in the opinion. The majority of the court, however, thought the cases differed so far in principle as to be distinguishable; the distinction pointed out being that the representations in the earlier cases involved only questions of fact, while the representations in the latter, being as to the solvency of a person, necessarily involved opinion, as

the question of solvency or insolvency of a person cannot ordinarily be subjected to precise facts. But, as we have said, the representations made in the case at bar fall within, and are controlled by, the rule of the earlier cases. There was, therefore, no error in this part of the charge of the court.

It is next assigned that the court erred in instructing as to the measure of damages. The appellant contends that the correct rule is the excess in value of the land pointed out over that actually conveyed, and he argues that especially ought this to be the rule when the representations were made by the defendants without knowledge of their falsity. But the character of the representations, that is whether they are made with or without knowledge of their falsity, cannot affect the amount of the recovery. In this case as in all others, the recovery should be commensurate with the injury; that is to say, the guilty party is to be charged with such damages as have naturally and proximately resulted from his wrongful act. In cases like the one at bar, these cannot be measured by the excess in value of the lots pointed out over those actually conveyed. This is doubtless one element of damage where the fact assumed exists, but it may be, and usually is, the least of the damages suffered by the person injured. It was to be supposed that the respondents here were buying this property for residence purposes, that they would improve it by clearing it of its brush and timber, that they would erect a dwelling house thereon, and that they would plant it with fruit trees, berry bushes, and useful and ornamental shrubbery. To be compelled to abandon these was clearly a damage to the respondents, and a damage which was the natural and proximate result of the appellants' act.

Cases where this precise question is presented seem

not to be many, but in *Carvill v. Jacks, Adm'r,* 43 Ark.. 454, it was held that, where the vendee was induced to purchase by the vendor's false and fraudulent representations as to his title, the vendee could, on eviction, in an action for deceit against the vendor, recover the value of such improvements as he had made on the land as were consistent with the use for which he had purchased it. To the same effect is *Bryant's Executor v. Boothe,* 30 Ala. 311, 68 Am. Dec. 117. In suits brought to rescind on the ground of deceit, the rule is general that recovery may be had for beneficial improvements put upon the land by the vendee. 29 Am. & Eng. Ency. Law (2d ed), 650. There can be no sound reason why such damages should be allowed in the one form of action, and denied in the other. The principle involved in the court's charge was, therefore, free from error. While it may have been too broad as a general rule, it was not erroneous as applied to the facts of this case, as the evidence, shown by the bill of exceptions, was such that the jury could not have been misled by it.

Lastly, it is assigned that the court erred in refusing to instruct that the respondents could not recover, if they failed to avail themselves of means readily accessible to them, by which they could have avoided entering on the wrong land. This court has held, in common with many other courts, that false representations on the part of a vendor are not actionable, even though relied on by the vendee, if the means of knowledge was as open to the vendee as it was to the vendor. *Washington Cent. Imp. Co. v. Newlands,* 11 Wash. 212, 39 Pac. 366; *Baker v. Bicknell,* 14 Wash. 29, 44 Pac. 107; *West Seattle Land & Imp. Co. v. Herren,* 16 Wash. 665, 48 Pac. 341; *Griffith v. Strand,* 19 Wash. 686, 54 Pac. 613; *Walsh v. Bushell,*

26 Wash. 576, 67 Pac. 216; *Samson v. Beale*, 27 Wash. 557, 68 Pac. 180.

But these cases are not in point in the case before us. Here the false representation was as to a material matter entirely without the knowledge of the respondents. As it was shown that the ground had been left to overgrow with brush and trees, and that the stakes of the original survey were destroyed, it was hardly possible for the respondents to locate the lots; hence they must of necessity rely on the representations of some one. Because they chose to rely on the representations of the appellants, the appellants cannot be heard to assert, as a means of escaping liability for making such representations, that the respondents should have gone to some one less reckless in their statements.

The judgment is affirmed.

MOUNT, C. J., HADLEY, and DUNBAR, JJ., concur.

RUDKIN, ROOT, and CROW JJ.. took no part.