[No. 7605. Decided July 17, 1909.]

JOSEPH WEST et al., *Plaintiffs and Appellants*, v.
L. B. CARTER et al., *Defendants and
Appellants*.[1]

VENDOR AND PURCHASER — REMEDIES OF VENDEE — DAMAGES FOR FALSE REPRESENTATIONS. A vendee induced to purchase land by false representations made by the vendor's agents in pointing out the boundaries, may recover his damages from the agents, although the representations were not known to be false nor wilfully made.

SAME—MEASURE OF DAMAGES. The measure of damages for false representations as to the boundaries of lands sold, where the vendees elect to keep the property, is the difference between the actual value of the property transferred at the time of the sale, and what the value would have been if the representations had been true, giving the vendees the benefit of their bargain (RUDKIN, C. J., and MOUNT, J., dissenting).

SAME—REPRESENTATIONS BY AGENTS—WHEN ACTIONABLE. Representations by agents in the sale of land as to the owner's representations regarding his boundaries, constitute actionable fraud on the part of the agents, where the boundaries are thereby falsely described to the purchaser, to his damage, and the agents schemed to prevent the parties from coming together.

[1]Reported in 103 Pac. 21.

Cross-appeals from a judgment of the superior court for San Juan county, Joiner, J., entered January 8, 1908, upon findings of the court, after a trial without a jury, awarding damages to the plaintiffs for false representations upon the sale of land. Reversed upon plaintiffs' appeal.

*Frederick R. Burch* and *John A. Saboe*, for plaintiffs.

*T. D. J. Healy* and *J. J. Noethe*, for defendants.

DUNBAR, J.—This is an action for damages for false representations as to the boundaries of land sold by the defendants to the plaintiffs. The findings of fact made by the court were, substantially, as follows: That the plaintiffs, Joseph West and Eva West, were husband and wife; that defendants Carter, Newhall, and Garrett were associated together in a partnership known as the "San Juan Land Company," a company organized for the purpose of buying and selling real property; that one A. J. Armstrong and Emma Armstrong, his wife, resided on, and were the owners of, certain real property situate in San Juan county; that the said San Juan Land Company had the sole and exclusive right of sale of said real and personal property for the period of thirty days for the price of $1,450; that on or about December 24, 1906, the plaintiffs came from Wenatchee, Washington, to the town of Friday Harbor, for the purpose of looking over the country with a view to purchasing land; that they came to the home of William and Cora Lee, who were old acquaintances of the plaintiffs; that the visit of the said Wests to the Lees continued for the period of about one week, during which time the Lees advised West concerning certain premises; that the Lees described to the plaintiffs the property of the Armstrongs before mentioned, and offered to show them the same; that upon the next morning Lee informed the plaintiffs that he would have to drive them down to Friday Harbor to see Mr. Garrett (meaning W. R. Garrett, manager of the San Juan Land Company) and find out whether or not the place was still for sale; that the said Lee and the Wests drove to

Friday Harbor, and Lee went to the office of W. R. Garrett and ascertained that the said place was still for sale, which fact he reported to the Wests, and also that Mr. Garrett was unable to go out with them, but that he (Lee) knew as much about it as Garrett, and he thereupon drove the Wests to the Armstrong place; that, at the time said plaintiffs and Lee went out to view said property, the defendant Carter, at the request of the defendant Garrett, called Armstrong on the rural telephone and told him (Armstrong) to come immediately to town; that Armstrong was called to town as aforesaid for the express purpose of keeping the plaintiffs and Armstrong from meeting, in order that said company's prospective commissions might not be jeopardized, and that the plaintiffs and Armstrong never did meet in connection with the viewing or selling of said premises; that Lee took the plaintiffs to the Armstrong place and pointed out the west, north, and south boundary lines, which were substantially correct.

In pointing out the east line to plaintiffs, Lee informed them that Armstrong told him that it was on the line of a certain fence, which fence made the tract pointed out as the Armstrong forty include eighteen acres on the west not belonging to said forty-acre tract or to said Armstrong; that said eighteen-acre tract was covered by two and one-half acres of stubble field, about twelve acres of slashing, and the balance rough and uncleared land; that upon the return of plaintiffs and Lee to the office of defendant Garrett, and before any contract of purchase was made, in speaking with reference to said last line of said Armstrong forty, Garrett informed plaintiffs that Armstrong told him that the stubble field and most of the slashing was included; that Lee and Garrett each in making the statement as to the eastern boundary of the Armstrong forty did so believing said statements to be true and without any intent to deceive or defraud the plaintiffs, or either of them; that thereafter on the 30th day of December, 1906, plaintiffs, relying wholly upon the state-

ments of Lee and Garrett as to the boundaries of the Arm-
strong forty, and believing said statements to be true, and
having no reason to believe otherwise, through the defendant
Land Company, as the agent of said owners, agreed to pur-
chase the said real and personal property for the sum of
$1,650, providing they could raise the money therefor;
whereupon Garrett, for and on behalf of the San Juan Land
Company, agreed to hold said property a few days for them;
that it was further understood and agreed, in case the plain-
tiffs were able to raise the money to conclude the purchase,
that they should send it to either Garrett or Lee; that the
plaintiffs returned to the house of Lee, where they stayed
that night, and the next day departed for their home at
Wenatchee; that on or about the 18th day of January, 1907,
plaintiffs sent to Lee the sum of $500 to be applied in pay-
ment upon said property under the arrangements made with
Garrett; that thereafter, to wit, on the 19th day of January,
1907, Lee took a contract of sale to himself from Armstrong
for the real and personal property described, for the sum of
$1,505, under the following terms:   $100 cash; $400 upon
the approval of abstract, and the remainder in stated install-
ments; that thereafter the money was paid to the Armstrongs
and deed taken in the name of L. B. Carter; that thereafter,
about the 1st of February, 1907, plaintiffs again arrived in
Friday Harbor from Wenatchee, and were informed of the
status of the transaction and purchase of the land by the
San Juan Company, and Carter then executed and delivered
to the Wests a bill of sale of the personal property and deed
of conveyance to the tract of land above described; which
said conveyance did not include the said eighteen-acre tract
of land composed of the stubble field and alder slashing and
the three and one-half acres of rough and uncleared land
mentioned above; and the plaintiffs paid the land company
the sum of $1,650, the agreed purchase price; that after
closing said purchase the plaintiffs went to the home of the
Lees, where they remained until February 10, when they

drove over to the Armstrong property and were told by Armstrong that they had been misinformed as to the lines of said place, and the proper boundaries were pointed out to them.

The plaintiffs elected to retain the land, and sued for damages. The court further found: That the reasonable value of the real estate excluding the eighteen acres was $950, and that the personal property was of the reasonable value of $550; that the land described, including the eighteen acres of slashing and stubble, etc., pointed out to the said Wests as part of the Armstrong premises, was reasonably worth the sum of $1,580; that the land pointed out to the Wests, together with the personal property which was transferred to them as a part of the transaction, was of the reasonable value of $2,130; that by reason of the statements made to plaintiffs by Lee and Garrett as to the location of the west boundary line of the Armstrong forty, and the purchase by plaintiffs of the said real and personal property, and by reason of and wholly relying upon said representations and believing the same to be true, and having no reason to believe otherwise, the plaintiffs were damaged in the sum of $150, and judgment was entered for that amount. Both parties have appealed.

The court awarded to the plaintiffs as their measure of damages the difference between the amount which they actually paid and the actual value of the land as found; while it is the contention of the plaintiffs that the proper measure of damages was the difference between the amount paid and the amount represented to be the value of the land, or the difference between the amount paid and the value of the land as it would have been if the land represented to have been sold had been actually sold. In other words, the question to be determined is whether, conceding the misrepresentations, the plaintiffs are entitled to the benefit of their bargain. The defendants insist, that the action should have been dismissed because no false representations were made by defendants; that the complaint shows that the basis of plaintiffs' case is

fraud or deceit consisting of the alleged misrepresentations of boundary lines, which alleged misrepresentations were false and fraudulent; that the record nowhere discloses the fact that the representations made as to the boundary lines were false, and that unless the representations were false the plaintiffs' action must fall. The affirmative contention of the plaintiffs in relation to maintaining this kind of an action has been disposed of by this court in *Hanson v. Tompkins*, 2 Wash. 508, 27 Pac. 73, where it was held that, if the defendants relied upon the representations of the plaintiff, and were led to believe by such representations that the lot contained $36\frac{1}{2}$ acres, when in fact it contained but $26\frac{1}{2}$ acres, and were induced by such representations to purchase such lot as a lot of $36\frac{1}{2}$ acres, it made no difference whether plaintiff knew such representations to be false or not; that he was liable for damages naturally flowing from such misrepresentations. The same rule was announced in *Sears v. Stinson*, 3 Wash. 615, 29 Pac. 205, where it was said:

"There can be no difference in principle, so far as maintaining any distinction between cases where the mistake was willful and where it was innocent, . . .."

Those cases were reviewed in *Lawson v. Vernon*, 38 Wash. 422, 80 Pac. 559, 107 Am. St. 880. In that case the following instruction was alleged as error:

"If you find from the evidence, as a matter of fact, that prior to the date of sale the defendant Vernon pointed out certain lands to one of the plaintiffs which were not as a matter of fact the lots conveyed, and that plaintiffs believed they were the same lands, and were told by the said Vernon, that they were the same lands, that plaintiffs are entitled to recover any damages which they sustained by reason of such misinformation, even if the said Vernon did not purposely mislead them, in other words, if the defendant Vernon made a mistake and pointed out the wrong property, even if his mistake were unintentional, yet he and his partner must be held for any pecuniary damage said mistake may have caused the plaintiff."

16—54 WASH.

This instruction was sustained by this court, the court stating in the course of the opinion that:

"The prevailing doctrine is that, if a person states as true, as of his own knowledge, material facts susceptible of knowledge, to one who relies and acts thereon to his injury, he cannot defeat recovery by showing that he did not know that his representations were false, or that he believed them to be true;"

citing *Cottrill v. Krum*, 100 Mo. 397, 13 S. W. 753, 18 Am. St. 549, and Sutherland, Damages (3d ed.), 1169. The court noticed the claim of the appellants in that case, as it is made in this, that a different doctrine was announced by this court in the case of *Northwestern S. S. Co. v. Dexter Horton & Co.*, 29 Wash. 565, 70 Pac. 59, and undertook to distinguish that case, from the fact that the opinion in that case pointed out that in the earlier cases the representations involved only questions of fact, while the representations in the latter, being as to the solvency of a person, necessarily involved opinion, as the question of solvency or insolvency of a person cannot ordinarily be subjected to precise facts. In any event, there was no expressed intention in that case to overrule the decisions in *Hanson v. Tompkins*, and *Sears v. Stinson, supra*, and the case of *Lawson v. Vernon* has undoubtedly become the established law of this state in that regard.

And this is the just theory, for the result to the party who is deceived is exactly the same whether the intention of the party upon whose representations he relied was fraudulent or not. If one by misrepresentation, even though innocent, is the cause of damage and injury, it would certainly be inequitable to visit that damage and injury upon the head of one who was in no way to blame, rather than upon the one who was the cause of such damage or injury. Under all the authorities, it was the right of the plaintiffs in this action, either to bring an action for rescission, or to retain the land and seek their remedy in damages. So that the sole question in the case is the measure of damages, the appeal being taken

from the conclusions of law, the contention being that they were not justified by the findings of fact, and there being no controversy over the facts.

It is said in 20 Cyc. 132, under the title, Fraud on purchaser and difference between actual and represented value:

"It has been frequently laid down that in an action based on fraud in the sale or exchange of property, if plaintiff retains the title and does not offer to rescind, the measure of damages is the difference between the actual value of the property at the time of the sale or exchange and what it would have been worth had it been as represented, or what its value was represented to be, and that this measure of damages applies without regard to the price paid or the value of the property given in exchange by the party defrauded, for it cannot always be said that plaintiff has suffered no injury because the bargain induced by the fraud was not a bad one and he has received the worth of his money. Plaintiff's right of recovery is determined by the position which he would have occupied had there been no fraud, and he is entitled to the benefit of his bargain on this basis."

The object of all rules in regard to the measure of damages is to permit such damages as naturally flow from the fraud or misrepresentation in the transaction. As was said by this court in *Lawson v. Vernon, supra*

"In this case as in all others, the recovery should be commensurate with the injury; that is to say, the guilty party is to be charged with such damages as have naturally and proximately resulted from his wrongful act. In cases like the one at bar, these cannot be measured by the excess in value of the lots pointed out over those actually conveyed. This is doubtless one element of damage where the fact assumed exists, but it may be and usually is, the least of the damages suffered by the person injured."

In this case it may well be presumed that the fact that the plaintiffs thought they were obtaining this eighteen acres of land which they specially noticed and which was more valuable than the other land, was the principal reason for their making the trade which they did make and for changing their

location from one part of the country to the other. It is no more than right that all these matters should be taken into consideration in measuring their damages, and they cannot be taken into consideration if the hard rule announced by the court is adopted.

"By the great weight of authority, in ordinary cases, the proper measure of damages in such a case, where the pur-chaser retains the property, is the difference between the actual value of the property at the time of the sale and what its value would have been if the representations had been true, for the purchaser is entitled to the full benefits of his bargain. This is clearly the more reasonable doctrine." 14 Am. & Eng. Ency. Law (2d ed.), p. 182.

"It is now well settled that, in actions for deceit or breach of warranty in sales, of personalty or realty, the measure of damages is the difference between the actual value of the property at the time of the purchase, and its value if the property had been what it was represented or warranted to be. The price paid for the property is strong but not conclusive evidence of its value, as it was represented to be." Bigelow, Law of Frauds, p. 627.

"This seems to be the proper place for considering the measure of damages in actions for fraud committed in the course of a sale of land. In such actions, as in actions for fraud in the sale of chattels, it has usually been held that the measure of damages is the difference between the land as it would have been if as represented and as it actually was." 3 Sedgwick, Damages, § 1027.

"In an action for fraud in inducing the plaintiff to part with his interest in land under the mistaken belief, brought about by the defendant's representations, that he owned only a life estate, the measure of damages is the difference between the value of the actual title conveyed and the value of the title which defendants represented to exist and which the plaintiff believed he conveyed." *Hicks v. Deemer*, 187 Ill. 164, 58 N. E. 252.

"The rule for the estimation of damages resulting from fraudulent representations in the sale of both real and personal property is the same. It is to ascertain the difference between the value of the property as it actually existed on the

day of sale, and the value as it was represented to be." *Herfort v. Cramer*, 7 Colo. 483.

And without further specifying, while there are some cases —most of them old cases—which sustain the rule contended for by the defendants, the great weight of authority sustains the rule that we have announced; and as we have before seen, there can be no reason for making any distinction so far as the measure of damages is concerned, between cases where the representations are actually fraudulent and where they are made through mistake.

It is contended by the defendants, that these representations were representations of representations; that the findings of fact show that the purchasers were simply told that the line was represented by the seller to be there. But under all the circumstances of the case, and considering the fact that a plot or scheme was entered into and carried out to prevent the coming together of the purchasers and the seller of these lands, so that these matters could naturally be adjusted and understood between them, we think the agents should be bound by the representations which they made as to the boundary lines of the lands sold by them.

The judgment will be reversed and the cause remanded with instructions to enter a judgment in favor of the plaintiffs, Joseph West and Eva West, against the defendants, for the sum of $630.

Fullerton, Crow, Morris, and Chadwick, JJ., concur.

Rudkin, C. J., dissents.

Mount, J. (dissenting)—I agree to the rules as stated in the majority opinion, but I cannot assent to the conclusion that the plaintiffs were damaged in the sum of $650. The total value of the property which plaintiffs intended to purchase, as found by the court, was $2,130. The price paid was $1,650. The difference was $480, which represents the whole damage under the rule stated. The fallacy of the conclusion of the majority is readily seen by applying the rule

as stated.    It is also seen by the following considerations:
If plaintiffs had rescinded the contract, as they had a right
to do, they would have been required to return the whole.
property to the defendants and receive their money back,
$1,650.    Instead of rescinding the contract, they chose to
keep the live stock valued at $550, and forty acres of land
valued at $950, or a total value of $1,500.    It must be as-
sumed that the plaintiffs had paid, or were willing to pay,
this value for the property which they retained.    The trial
court found that the eighteen acres of land, which was not
conveyed, because it was not owned by the vendors, was of
the value of $630.    There must have been some consideration
for the purchase of this tract of land.    That consideration
necessarily must have been at least the difference between
$1,500, the value of the property retained by the plaintiffs,
and the price paid, viz., $1,650, which difference is $150.
This was the amount which plaintiffs paid in excess of the
value of the property they received.    The difference between
the property received and what they intended to purchase
was $630, for which they paid at least $150.    They were,
therefore, damaged in the difference, or $480.    The result
reached by the majority, in effect, says that no part of the
consideration was paid for the eighteen-acre tract, and that
all the profits of the purchase rested in this tract, which, of
course, is not correct either in theory or usual dealing.    I
therefore think the judgment should be for the sum of $480
instead of $630.