[No. 30985. Department Two. August 5, 1949.]

W. E. DARNELL et al., Respondents, v. FRANK NOEL et al., Appellants.[1]

[1] Reported in 208 P. (2d) 1194.

430

*Cheney & Hutcheson,* for appellants.

*Elery A. Van Diest* and *D. H. Bonsted,* for respondents.

SIMPSON, J.—Plaintiffs instituted their action as purchasers against defendants as sellers for rescission of the sale of real and personal property on the ground of fraudulent representations by the defendants as to a portion of the boundary line enclosing the real estate. The court entered its decree in favor of plaintiffs, rescinding the sale and giving them judgment for the purchase price, less certain credits for rents received.

Defendants, on appeal to this court, make ten assignments of error which are sufficient to challenge the decree, the amount of rents received, and the court's refusal to grant a new trial.

Appellants call attention to the fact that this is a suit in equity and the court must hear the case *de novo.* This statement is, without doubt, based upon our statute, Rem. Rev. Stat., § 1736 [P.P.C. § 5-65]. We have in the past given the statute a reasonable construction. It was never contemplated that we should take up and examine the evidence incorporated into the statement of facts and pass upon its weight without any consideration of, or reference to, the decision of the trial court, or other means afforded by that tribunal for deciding questions of fact.

The fundamental and primary power of this court as given it by our state constitution is that of a court of appeals. Its functions as an appellate tribunal are essentially different from those of the trial court, and it is not within the power of the legislature to confer or impose upon this court, in cases over which it acquires jurisdiction by appeal

powers, those powers and duties which naturally belong to a trial court. We cannot weigh the preponderance of conflicting oral evidence for oftstated and obvious reasons.

In line with this conclusion, we have adopted rules of law which govern our consideration of equity cases. These rules were collected and restated in *Columbia Lbr. Co. v. Bush,* 13 Wn. (2d) 657, 126 P. (2d) 584. In that case, we restated the rule as follows:

"Findings of fact are not required in equity cases, but if they are made by the trial court they will be considered and given great weight if the statement of facts is included in the record before us.

"Equity cases are tried *de novo* in this court. In so considering the case, it is our duty to make an independent examination of all of the evidence and all of the circumstances surrounding the various parties to the action as disclosed by the statement of facts, and from that examination decide what findings should have been made.

"If the determination of the cause depends upon testimony which is in serious conflict, or upon evenly balanced evidence, this court will not disturb the findings of the trial court unless other factors are present which compel us to reach a contrary conclusion. However, if this court ascertains from the entire record that the findings are not supported by a fair preponderance of the evidence, they will be disregarded."

No findings of fact or conclusions of law were made by the trial court in this case. Under our rule, it becomes necessary to examine the statement of facts, including the exhibits admitted in evidence. Before referring to the facts, however, it seems advisable to set out certain general rules of law which govern actions relating to charges of misrepresentation of boundary lines during the time real property is being sold.

Whenever the owner of property undertakes to point out to a prospective purchaser the boundaries of the property he expects to sell, his representations are matters of fact, and not of opinion. In indicating the boundaries, he must do so accurately, and his failure so to do will amount to a false representation, even though he acted under an

honest mistake, without intent to deceive. *Lawson v. Vernon,* 38 Wash. 422, 80 Pac. 559, 107 Am. St. 880; *Freeman v. Gloyd,* 43 Wash. 607, 86 Pac. 1051; *Shaw v. O'Neill,* 45 Wash. 98, 88 Pac. 111; *West v. Carter,* 54 Wash. 236, 103 Pac. 21; *Bradford v. Adams,* 73 Wash. 17, 131 Pac. 449; *Lyle v. Cunningham,* 79 Wash. 420, 140 Pac. 330; *Algee v. Hillman Inv. Co.,* 12 Wn. (2d) 672, 123 P. (2d) 332; *Thompson v. Huston,* 17 Wn. (2d) 457, 135 P. (2d) 834; *Dixon v. MacGillivray,* 29 Wn. (2d) 30, 185 P. (2d) 109.

The property in question, owned by appellants for thirty-five or forty years, is situated on the east side of north Tenth street, and at the east end of B street in Yakima, Washington. B street extends in a westerly and easterly direction, extending east of north Tenth street for several feet. The parcel of land, containing over one acre, is 337 feet long on the north boundary and 157 feet on the east boundary. A two-story, ten-room house faces west along B street. At the time of the purchase, a garage and other buildings were located on the south portion of the property. The property was described in the deed by metes and bounds and included, in the south and west sides, a portion of B street. In fact, the front portion of the house stood on B street. The entire space between the residence and north Tenth street was used for a lawn and the location of trees and shrubs. There was nothing to indicate to anyone that B street extended east of north Tenth street.

Appellants listed the property for sale, and the sale sign was noticed by a Mrs. Alice Nelson. She contacted respondents and went with them to see the property. Mr. Darnell parked his car in the rear of the house, and all parties, including Mrs. Nelson, engaged in a conference. Respondents finally agreed to purchase the real property, together with some personal property, for fifteen thousand two hundred dollars, and paid as earnest money on their first visit, the sum of three thousand dollars.

In September, 1947, respondents learned that a portion of the property included in the deed and in the area formerly maintained by appellants, was in fact a portion or part of

B street. They then notified appellants of their discovery. The parties, thereafter, endeavored to have that part of B street included in the deed, vacated. The city commission passed an ordinance whereby the city vacated the north fifty feet of B street, thereby leaving the south thirty feet still in the public street. The north line of the thirty-foot portion of the street is but eighteen inches south of the house.

The evidence relative to whether appellant Noel made any representations concerning the boundaries of the property is in serious dispute. Mr. Darnell testified that Frank Noel pointed out the southwest corner of the property at a point where Noel said there was a buried pipe. Noel then took him to the northwest corner where he stated there was another buried pipe. Noel then escorted Darnell through some berry bushes to a point described by Noel as the northeast corner. Darnell then was shown the east side of the property, where Noel indicated the location of the southeast corner of his property and then stated that his south line ran directly from the indicated northeast corner to the first point shown to Darnell.

Mr. Noel denied that he had indicated in any way the boundaries of his property. He stated that on the day the earnest money was paid, he told Darnell, while in his house: "Before you buy that place, let's go out and look at it," and Darnell answered, "I know all about this place."

He admitted that immediately after the deed was delivered he showed Darnell

" . . . that pin on the north side, up the corner, on the west side of the place, and then back to the—then back close to apple tree before went down the hill; then I showed him another pin there, for his benefit,—he wasn't asking me for it. I went there to show it to him."

He later said he showed Darnell the northeast corner and the southeast corner. He also testified that he had told Darnell before that he didn't have the line on the south or west side. He admitted that he knew that a small part of the property occupied in front was a portion of B street.

He put it this way: "Just about like a parking strip in front, to me."

The testimony of Mr. and Mrs. Aiken, son-in-law and daughter of appellants, and that of Mrs. Alice Nelson, corroborated the evidence given by Mr. Noel.

Appellants contend that our case of *Gudmundson v. Commercial Bank & Trust Co.*, 138 Wash. 355, 244 Pac. 676, and other cases of like import, determine the issues here presented. The cited cases hold that uncorroborated evidence of the vendee as to fraudulent representations, contradicted by other witnesses, is not such clear and convincing evidence as is necessary to establish fraud. The cases, however, have no bearing here, because, as we have pointed out, it is not necessary to establish fraud.

The determination of this case depends entirely upon the credibility of the witnesses, and the weight to be given to their testimony. The trial court in his memorandum opinion, stated:

"The evidence in this case shows that the physical boundaries of the property in question were pointed out to the plaintiffs by the defendant Frank Noel. It is true the defendants deny that same were pointed out, but the court concludes from the testimony of all of the witnesses that the version of the transaction testified to by the plaintiffs is correct; namely, that when the plaintiffs Darnell and wife entered into negotiations with the defendants for the purchase of the property in question, they walked over the premises and that the defendants pointed out the physical boundary lines. That this version of the testimony is correct is to the court's mind conclusively supported by the actions of the defendants after it was discovered that in truth and in fact the boundary lines represented by the defendants were not correct."

We are unable to conclude that the court incorrectly weighed the evidence produced at the trial, or that he arrived at an erroneous conclusion. This result is supported by the physical condition of the property as viewed by respondents. The entire tract was occupied by appellants, and used by them as a home. The large house and other buildings were built upon the real property and the sur-

rounding grounds had been developed by the planting of shrubs and trees, and was used as any ordinary home would be used. The property so maintained by appellants was in itself a representation that it was all owned by them. Its occupancy plainly marked its boundaries. We cannot imagine a more definite representation that the whole property, as occupied by appellants, was sold to respondents. This in itself was a material representation justifying, in connection with the oral evidence, the conclusion arrived at by the trial court.

■ It is next argued that the action for rescission was not timely commenced. It is a well-settled rule that actions for rescission must be promptly commenced. *Thomas v. McCue,* 19 Wash. 287, 53 Pac. 161; *Pearson v. Gullans,* 81 Wash. 57, 142 Pac. 456; *Blake v. Merritt,* 101 Wash. 56, 171 Pac. 1013; *Weir v. School Dist. No. 201,* 200 Wash. 172, 93 P. (2d) 308, 123 A. L. R. 1057. The application of this rule is governed by the facts present in each case. As soon as respondents discovered the true boundaries of the property they had purchased, they called it to the attention of appellants, who endeavored to remedy the defect by having the occupied portion of B street vacated. Certainly, during that period of time there was no obligation on the part of respondents to institute an action. This action was brought seven and one-half months after the discovery of the defect in the boundaries, and four months after the city commissioners had refused to vacate all that part of B street formerly occupied and used by appellants.

The facts in *Lyle v. Cunningham,* 79 Wash. 420, 140 Pac. 330, are similar to those present in the case at bar. There, the seller sold land represented to contain 59.67 acres. The purchaser took possession shortly after December 14, 1909. In April, 1910, he had the land surveyed and found that it contained 46.77 acres. He then entered into negotiations with the seller for the purpose of securing a settlement. However, the parties could not agree, and January 6, 1913, an action was started to reform the contract of sale and for

other relief. In passing upon the defense of laches, this court stated:

"Some claim is made that McMurray was guilty of laches; and, also, that, by permitting the taxes and interest to become delinquent, his rights were forfeited by notice to that effect given after the suit was instituted. Neither of these claims are well founded. After McMurray had caused the land to be surveyed and had thereby discovered the fraud that had been practiced upon him, he entered upon negotiations with the appellant James Cunningham for an adjustment of the matter. These negotiations continued over a considerable period of time. We think the court did not err in resolving these questions against the appellants."

We hold that respondents brought their action within a reasonable time, and therefore were not guilty of laches.

 Appellants attack the judgment of the trial court on the ground that it was excessive, and that it did not allow adequate credits to them. During the time respondents occupied the property, they received rentals in the sum of $4,200. They were allowed charges against this amount for operating expenses in the sum of $1,870.31. Included in this item was a charge for remodeling a building on the property so it could be used as an apartment. The net credit allowed appellants against the purchase price of $15,200 was $1,374.31. During the time respondents were in possession of the property, they tore down four small buildings which were on the property. All of these buildings were old and unsightly and were, in fact, of no real value to the property.

After reading the testimony given by the various witnesses, we conclude that the trial court was justified in refusing to allow appellants additional credits.

The judgment is affirmed.

JEFFERS, C. J., ROBINSON, SCHWELLENBACH, and GRADY, JJ., concur.