[No. 7695.   Decided March 29, 1909.]

## Zula Davis, *Respondent*, v. Charles S. Lee et al., *Appellants*.[1]

Deeds—Merger—Vendor and Purchaser—Contract to Sell—
Construction. There is an exception to the general rule that an
accepted deed merges the contract between the parties, where the
vendor had agreed in writing "to sell" the land and to convey by a
quitclaim deed, and, after payment of the purchase price, it was
found that he had no title.

Appeal—Review—Harmless Error. Where there is a trial *de
novo* in the supreme court, error in the admission of evidence is
harmless.

Vendor and Purchaser—Agreement "To Sell" Land—Warranty.
An agreement "to sell" land is a contract to sell a title, and implies
an engagement to make a good title, in the absence of a stipulation
to the contrary.

Same—Contract "To Sell"—Stipulation for Quitclaim Deed—
Effect—Construction. Where a contract for the sale of land stipu-
lated that the vendor "will sell to" the vendees and that the ven-
dees "will purchase" the land described, making time of the essence,
and provided for a forfeiture in case of nonpayment, and that upon
full payment and request, the vendor "shall make . . . a quit-
claim deed to said premises," the vendor has obligated himself both
"to sell" the land and to make the deed, and the execution of a quit-
claim deed without having title to the land, does not absolve him
from his obligation "to sell"; in which case the vendee can recover
the purchase money paid.

Same—Contracts—Construction — Erasure of Printed Forms.
In such a case, the fact that in the printed form of contract, the
words "a deed to said premises" were erased and "a quitclaim deed"
substituted in ink, does not show an intent to limit the contract
to the legal effect of a quitclaim deed; since there would be no in-
consistency in the contract "to sell the premises," and since under a
liberal rule of construction, a quitclaim in such case is in effect a
bargain and sale deed or a "deed," and effectual under the statute
to convey title.

Principal and Agent—Disclosed Agency—Liability of Agent to
Third Party. A real estate agent signing a contract to sell land on
behalf of the owner, and transacting all the business as agent, is
not liable for his principal's default on failing to convey a good
title, where none of his acts were inconsistent with the relation of
agency.

[1]Reported in 100 Pac. 752.

INTEREST—LEGAL RATE—MONEY PAID. Upon recovery of money paid on a contract to buy land, it is error to allow interest at a greater rate than the legal rate of six per cent.

Appeal from a judgment of the superior court for King county, Griffin, J., entered July 13, 1908, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to recover money paid under a contract to purchase land. Affirmed in part and reversed in part.

*Fred H. Peterson*, for appellants, contended, that the delivery and acceptance of the deed created a merger of the contract therein, and, the contract ceasing to legally exist, no action could be based thereon. 13 Cyc. 616; *Houghtaling v. Lewis*, 10 Johns. 297; *Thomas v. Barton*, 48 N. Y. 193; *Fritz v. McGill*, 31 Minn. 536, 18 N. W. 753; *Bryan v. Swain*, 56 Cal. 616; *Williams v. Hathaway*, 19 Pick. 387. The possession of the deed by the grantee raised a presumption of delivery and acceptance. Lawson, Presumptive Evidence, p. 491; *Branson v. Caruthers*, 49 Cal. 374. The written words "quitclaim deed to the premises" inserted in a contract partly printed will, in construing the contract, be held to express the intent of the parties thereto. *Daly v. Busk Tunnel R. Co.*, 129 Fed. 513. The contract being executed and the deed containing no covenants, no recovery can be had unless the action be based upon fraud or mistake. *Decker v. Schulze*, 11 Wash. 47, 39 Pac. 261, 48 Am. St. 858, 27 L. R. A. 335; *Wilde v. Gibson*, H. L. 1 Clark & Fin. (N. S.) 605; *Thompson v. Jackson*, 3 Rand. (Va.) 504, 15 Am. Dec. 721; *Woodruff v. Bunce*, 9 Paige Ch. (N. Y.) 443, 38 Am. Dec. 559; *Denston v. Morris*, 2 Edw. Ch. (N. Y.) 37; *English v. Thomasson*, 82 Ky. 280; 2 Warvelle, Vendors, 1104. Nor can the purchaser recover his money on the ground of failure of title, unless the deed contains covenants, or unless the grantor is guilty of fraud. *West Seattle Land & Imp. Co. v. Novelty Mill Co.*, 31 Wash. 435, 72 Pac. 69; *Union Pac. R. Co. v. Barnes*, 64 Fed. 80; *Botsford v. Wilson*,

75 Ill. 132. The judgment against the defendant Vernon was error, inasmuch as his agency was known to the plaintiff. *Wilson v. Wold*, 21 Wash. 398, 58 Pac. 223, 75 Am. St. 346.

*W. F. Freudenberg*, for respondent.

Chadwick, J.—Prior to the 4th of May, 1903, defendant Charles S. Lee had acquired a tax title to the lands hereinafter described. On that day he, as party of the first part, and D. P. Merritt and H. Merritt, as parties of the second part, entered into the following contract.

"REAL ESTATE CONTRACT.

"It is hereby mutually agreed, by and between Charles S. Lee, unmarried, of Ballard, Wash., the party of the first part, and Harry Merritt and D. P. Merritt, the parties of the second part, that said party of the first part will sell to said parties of the second part, their heirs and assigns, and said parties of the second part will purchase of said party of the first part, his heirs, executors or administrators, the following described lots, tracts or parcels of land, situate in King County, Washington: All of lots one (1) two (2) three (3) four (4) and five (5) in block seventy-two (72) in Salmon Bay Park Addition to the city of Seattle now in Ballard, with the appurtenances thereunto belonging, on the following terms:

"First, the purchase price for said land is two hundred fifty & no-100 dollars, of which the sum of twenty-five & no-100 dollars has this day been paid as earnest, the receipt whereof is hereby acknowledged by said party of the first part; and the further sum of two hundred twenty-five & no-100 dollars to be paid on or before the — day of ———, A. D. 19—, with interest thereon from this date until paid at the rate of 8 per cent per annum, as follows, to wit: Ten & no-100 on the first day of each and every following month until fully paid, and the said parties of the second part, in consideration of the premises, hereby agree that they will regularly and seasonably pay all taxes and assessments which may be hereafter lawfully imposed on said premises. All improvements placed thereon shall remain, and shall not be removed before the final payment be made for said above described premises. In case the said parties of the second

part, their legal representatives or assigns, shall pay the several sums of money aforesaid, punctually at the several times above specified, and shall strictly and literally perform all and singular the agreements and stipulations aforesaid, according to the true intent and tenor thereof, then the said party of the first part shall make to the said second party, his heirs or assigns, upon request, and upon surrender of this agreement, a quitclaim deed to said premises. But in case the second parties shall fail to make the payments as set forth in this agreement, or any of them punctually, and upon the terms and at the times specified, the times of payment being declared to be of the essence of this agreement, or permit any lien for labor or material to be filed against said real estate, then the party of the first part, his heirs, executors, or assigns, shall have the right to declare this agreement null and void, and in such case all the rights and interest of second parties hereby created or then existing shall utterly cease and determine, and the premises shall revert to and revest in said first party without any declaration of forfeiture or act of re-entry, and second parties shall have no right of reclamation or compensation for money paid or improvements made, as absolutely, fully and perfectly as if this agreement had never been made, and in such event such payments shall be retained by said party of the first part as compensation for · the use and occupancy of said premises by said parties of the second part, and as rental thereof. And it is further agreed, that no assignment of this agreement shall be valid without the consent and signature of Charles S. Lee or W. H. Vernon, agent, the party of the first part. And the said second parties hereby agree to pay to said first party the remaining principal and interest as follows: : . . Payments to be made on or before the above dates to Charles S. Lee or W. H. Vernon, Agt., or order. Interest due, to be deducted from any payment made.

"Witness our hands and seals in duplicate, this 4th day of May, A. D. 1903.

"Charles S. Lee    (Seal)<br>
"D. P. Merritt    (Seal)<br>
"H. Merritt    (Seal)

"Signed, sealed and delivered in presence of
 "H. Galloway
 "W. H. Vernon."

Thereafter the Merritts sold all right, title, and interest in the contract to Joseph I. Davis and Zula Davis, his wife, plaintiffs herein. All payments were made as stipulated, and a quitclaim deed was executed by defendant Lee on the 22d day of September, 1905, which was delivered to Mrs. Davis, but she denies that it was ever accepted as a discharge of defendants' contract. It was never recorded. Just prior to the last payment, plaintiffs were threatened with an action of ejectment. They notified defendant Vernon, who had acted throughout for defendant Lee, of the pendency of the action. When the action was brought, Lee was made a party to the suit. He thereupon served notice on plaintiffs that, if they did not immediately pay the balance due—a matter of $17.10—he would forfeit the contract. Plaintiffs accordingly paid the amount, taking a receipt in full and a quitclaim deed. Lee did not defend the action of ejectment, but filed a disclaimer of any interest in the land, and was dismissed as a party. Plaintiffs assumed to defend the title, but were unsuccessful. After judgment against them, they purchased the property from the owner; whereupon they brought this action to recover the purchase price and the costs and expenses incurred in the action of ejectment. Pending the trial in the court below, plaintiff Joseph I. Davis died, and the action has since been prosecuted under the original title by Zula Davis, in accordance with the stipulation of the parties. The trial court found for the plaintiffs in the sum of $250, the purchase price, with interest at the rate of ten per cent per annum, but denied a recovery for the costs and expenses incurred in defending their title.

Appellants assign numerous errors, but aside from a general assignment as to the admission of testimony, they all go to the one legal proposition, Did the appellant Lee perform his contract by the execution and delivery of a quitclaim deed? Appellants contend that, whatever the original contract may have been, and whatever agreements or assurances may have been given during the life of the contract, they were all

merged in the deed, and by its acceptance appellants took only such title as Lee had, and are without remedy. We agree with counsel that the general rule is that "a deed made in full execution of a contract of sale of land merges the provisions of the contract therein, and this rule extends to and includes all prior negotiations and agreements leading up to the execution of the deed, all prior purposes, stipulations and oral agreements, all collateral promises, including promises made contemporaneously with the execution of the deed." Like most all rules, the one quoted has its exceptions, and continuing the same text we find the following:

"A deed is not, however, always a merger of the articles of agreement, etc., nor are a vendor's or a purchaser's covenants necessarily merged or discharged, and a parol agreement may be suspended by the subsequently executed instrument. The question of merger has also been declared to be one of construction to be gathered from a consideration of the entire contents of the instruments." 13 Cyc. 616.

Appellant Lee agreed to sell certain described town lots. The purchase price for the land, not his right, title or interest, but the land itself, was agreed upon, which sum the vendees agreed to pay in installments, and in the meantime to pay all taxes and assessments thereafter to be levied on the premises. The intention of the parties must be gathered from the instruments, and their conduct with reference thereto. That respondent and her husband intended to buy the land, rather than an uncertain interest, cannot be questioned; and, in our opinion, they were justified in relying upon the text of the contract. The rule governing this case is well stated in *Morris v. Whitcher*, 20 N. Y. 41, as follows:

"In all cases then, where there are stipulations in a preliminary contract for the sale of land, of which the conveyance itself is not a performance, the true question must be whether the parties have intentionally surrendered those stipulations. The evidence of that intention may exist in or out of the deed. If plainly expressed in the very terms of the deed, the evidence will be decisive. If not so expressed, the

question is open to other evidence, and I think in absence of all proof there is no presumption that either party, in giving or accepting a conveyance, intends to give up the benefit of covenants of which the conveyance is not a performance or satisfaction. There are remarks of judges, in cases which need not be particularly referred to, which seem in their result to deny the possible co-existence of a deed and of a collateral writing, which qualifies its effect, especially if the collateral writing be made before the deed. But I have shown, I trust, that there is no such rule as observations of that nature would appear to suggest."

See, also, *Brennan v. Schellhamer*, 13 N. Y. Supp. 558; *Disbrow v. Harris*, 122 N. Y. 362, 25 N. E. 356.

Error is also predicated upon the allowance of oral testimony as to the conversations and assurances made by defendant Vernon with regard to the condition of the title after the written contract had been signed. Inasmuch as the case was tried by the court without a jury and is here to be tried *de novo*, the error, if any, cannot be held to be prejudicial. It is possible to determine this case upon the contract and deed without reference to the oral testimony. The rights and obligations of the parties cannot be measured by the deed alone. The contract is entitled to equal consideration.

"It is not the ordinary case of the breach of a covenant in a deed, where the remedy would be a suit on the warranty, but the respective contracts here are dependent upon each other. The deed was made in consideration of a separate instrument in writing entered into between the grantor and grantee, and it is very evident from that contract that it was not simply a deed of the fee that the appellant was contracting with reference to, but that it was the real title to the land, and the character of the deed was simply stipulated as a compliance with the forms prescribed for conveying such title; in other words, there is nothing to indicate that the appellants were contracting for the shadow rather than the substance." *Moody v. Spokane & University Heights St. R. Co.*, 5 Wash. 699, 32 Pac. 751.

Respondent undertook to buy something more than a

chance title. This the contract shows. To segregate the words " a quitclaim deed to said premises," and hold her to the legal import of those words, without reference to their relation to other words and covenants in the contract, would be an injustice to the buyer and do violence to accepted rules of construction. If a party agrees to sell land, it is in legal effect an agreement to sell a title to the land. In the absence of a stipulation to the contrary, the law implies an undertaking on the part of the vendor to make a good title. 29 Am. & Eng. Ency. Law (2d ed.), p. 606; *Ankeny v. Clark*, 1 Wash. 549, 20 Pac. 583; 2 Warvelle, Vendors (2d ed.), 836. The form of conveyance is a secondary consideration. There may be reasons for giving or receiving a quitclaim deed. These will not be inquired into so long as that form of deed will convey the title agreed to be conveyed, in the contract itself.

Much of appellants' brief is taken up with a discussion of the effect of a quitclaim deed. The authorities cited refer to executed rather than executory contracts, and are not in point for that reason. The impression prevails to some extent that an agreement to sell land by quitclaim deed or other conveyance of less worth than a warranty deed, absolves the vendor from any obligation other than the execution and delivery of his deed; that it is a reservation of immunity on his part from all liability in damages for a breach of his contract or failure of title. This is erroneous. The effect of a quitclaim deed was considered in the case of *Ankeny v. Clark*, *supra*, where, after some discussion, the court said:

". . . under the statutes of our territory, a quitclaim deed is just as effectual to convey the title to real estate as any other form of deed, and a grantee in a quitclaim deed is entitled to the same presumptions as to bona fides, and has the same rights, as a grantee in a deed of general warranty. This is undoubtedly true of a quitclaim deed which purports on its face to convey, not merely an interest, but the real estate itself."

22—52 WASH.

The effect of a covenant to convey by special warranty deed was discussed in the case of *Baldwin v. Brown*, 48 Wash. 303, 93 Pac. 413;

"As the controversy is not as to the effect of a special warranty deed, but as to a contract to 'convey' by special warranty deed, and as the contract contains the expression 'that the said J. W. Brown reserves the right and title to said land until the same is paid for in full,' the respondent claims, and apparently the trial court was of the opinion, that appellant by said contract purported to have 'right and title' to said land, and agreed to 'convey' the same, and that the contract contemplated this, and that as a court of competent jurisdiction, prior to the final payment on this contract, had decided that appellant had no right or title whatever to said five acres, he was therefore unable to 'convey' by a special warranty deed, or by any other form of conveyance. The court, therefore, held that the appellant was not in a position to require respondent to pay for that which the former had agreed to, but could not, convey. We think this position must be maintained."

While in this case there is no express reservation of a title, reference to the whole contract shows that it was the intent of the vendor to retain title until full payment. He has made time the essence of the contract, and provided for forfeiture not only on account of failure to meet payments, but for any impairment of title by mechanics' liens, tax sales, etc. The case, therefore, rests upon the same principle. If a vendor who contracts to sell land has no title, or fails or refuses to furnish a proper title at the time the vendee is entitled to it, the latter can maintain an action to recover the purchase price. The vendor has assumed the attitude of ownership, and a failure to perform is in law a misrepresentation for which an action will lie. Appellants undertake to meet this proposition by reference to the case of *Decker v. Schulze*, 11 Wash 47, 39 Pac. 261, 48 Am. St. 858, 27 L. R. A. 335. They quote the following:

" 'Generally speaking, a purchaser after a conveyance has no remedy, except upon the covenants he has obtained, al-

though evicted for want of title; and however fatal the de-
fect of title may be, if there is no fraudulent concealment on
the part of the seller, the purchaser's only remedy is under
the covenants.' "

This is no more than a statement of an abstract proposi-
tion of law, and was evidently used to illustrate the main ques-
tion before the court, which was the construction of plead-
ings. In that case plaintiffs had alleged that defendants
were not seized in fee simple or possessed of the right to sell
and convey. On this point the court said:

"This is, at most, equivalent merely to a statement that
their interest in the granted premises was less than a fee
simple estate, and cannot be held to be equivalent to an al-
legation that they had no estate or interest in the premises.
We think this is wholly insufficient to constitute good plead-
ing, at law or in equity."

In this case an absolute failure of title is alleged, and it
will thus be seen that that case is not authoritative. We
think the true rule is announced in the case of *Sears v. Stin-
son*, 3 Wash. 615, 29 Pac. 205, where the court upheld an
action of this character, saying:

". . . but there is no reason either why he could not
compel the party who has sold him more than he can deliver
to return the excess payment; and that is simply what it
amounts to. It is not a case in deceit, and a different rule
of damage will apply altogether. There is no deceit alleged.
It is an action under the statute, where the complaint is a
plain and concise statement of facts constituting a cause of
action. In this case the statement is, that by reason of false
representations made by defendant, the plaintiff paid for
more land than he received. There certainly can be nothing
inequitable in this procedure if a just measure of damages is
employed. The purchaser pays for what he gets, the vendor
gets pay for what he has to sell; this is all he is entitled to,
let his mistake be ever so innocent."

And in the later case of *Curtley v. Security Sav. Society*,
46 Wash. 50, 89 Pac. 180:

"While this court has, in common with many other courts,
held that false representations involving mere matters of

opinion, or question of judgment, as much within the knowl-
edge of one party as the other, are not grounds for an action
of deceit, it has also held that false representations as to the
quantity of land contained in a given description, or false
representations as to the boundaries and location of land,
or as to its title, if made positively and with the intent that
they should be relied upon, were not of that sort, but were
actionable if relied upon by the vendee to his injury. *Han-
son v. Tompkins,* 2 Wash. 508, 27 Pac. 73; *Sears v. Stinson,*
3 Wash. 615, 29 Pac. 205; *Lawson v. Vernon,* 38 Wash. 422,
80 Pac. 559; *Freeman v. Gloyd,* 43 Wash. 607, 86 Pac. 1051.
Such, also, is the general rule. 14 Am. & Eng. Ency. Law
(2d ed.), pp. 24, 88; 29 Id. 654-657; *David v. Park,* 103
Mass. 501."

It is further argued that, because the words " a deed to
said premises" as printed in the contract, were erased, and
the words "quitclaim deed to said premises" written in lieu
thereof, an intention of the parties to limit their contract to
the legal effect of a quitclaim deed was manifested. It is the
rule that, where written words are inconsistent with or con-
tradict part of a printed form, the written words will be
presumed to disclose the true intent of the parties. But the
rule has no application to this case, for two reasons; (1) there
is no inconsistency in the contract; and (2) a quitclaim deed
in a case like this is, under our liberal rule of construction,
in effect a bargain and sale deed or a "deed" as provided in
the erased portion, and just as effectual to convey title as
either of them.

Our conclusion is that the appellant Lee agreed, in con-
sideration of a certain sum, to do two things: to sell the land
described in the contract, and make a quitclaim deed. He
has made the deed but he has failed to sell the land. The
contract was mutual. As he reserved the right to protect
his engagements by apt clauses in the contract, he will be
bound upon payment to the full performances of his obli-
gation. Having agreed to sell something he never owned, he
cannot discharge that part of his agreement. Hence, it
follows that respondent is entitled to recover the purchase

price.   The contract was signed by appellant Vernon as agent for appellant Lee.   He transacted all the business between the parties, but a careful reading of the statement of facts fails to disclose any act on his part inconsistent with the relation of agency.   He could not have sued for a breach of the contract or for specific performance.   He should not then be held liable as a principal.   We think the court erred in rendering judgment against him.

In entering judgment the lower court fixed the rate of interest at ten per cent per annum.   In this the court erred. Respondent is entitled to recover the legal rate of interest, but no more.

The case is affirmed as to appellant Lee, and reversed as to appellant Vernon, with instructions to the lower court to modify the judgment in so far as it provides for more than the legal rate of interest.   Appellant Vernon will recover his costs against respondent.   Respondent will recover her costs against appellant Lee.

RUDKIN, C. J., DUNBAR, GOSE, FULLERTON, and MOUNT, JJ., concur.

CROW, MORRIS, and PARKER, JJ., took no part.