[No. 35230. Department Two. June 30, 1960.]

FRED OBDE *et al., Respondents,* v. ROBERT L. SCHLEMEYER *et al., Appellants.*[1]

[1]Reported in 353 P. (2d) 672.

*Geo. W. Young,* for appellants.

*Patrick H. Murphy,* for respondents.

FINLEY, J.—Plaintiffs, Mr. and Mrs. Fred Obde, brought this action to recover damages for the alleged fraudulent concealment of termite infestation in an apartment house purchased by them from the defendants, Mr. and Mrs. Robert Schlemeyer. Plaintiffs assert that the building was infested at the time of the purchase; that defendants were well apprised of the termite condition, but fraudulently concealed it from the plaintiffs.

After a trial on the merits, the trial court entered findings of fact and conclusions of law sustaining the plaintiffs' claim, and awarded them a judgment for damages in the amount of $3,950. The defendants appealed. Their assignments of error may be compartmentalized, roughly, into two categories: (1) those going to the question of liability, and (2) those relating to the amount of damages to be awarded if liability is established.

First, as to the question of liability: The Schlemeyers concede that, shortly after they purchased the property from a Mr. Ayars on an installment contract in April 1954, they discovered substantial termite infestation in the premises. The Schlemeyers contend, however, that they immediately took steps to eradicate the termites, and that, at the time of the sale to the Obdes in November 1954, they had no reason to believe that these steps had not completely remedied the situation. We are not convinced of the merit of this contention.

The record reveals that when the Schlemeyers discovered the termite condition they engaged the services of a Mr. Senske, a specialist in pest control. He effected some measures to eradicate the termites, and made some repairs in

the apartment house. Thereafter, there was no easily apparent or surface evidence of termite damage. However, portions of the findings of fact entered by the trial court read as follows:

"Senske had advised Schlemeyer that in order to obtain a complete job it would be necessary to drill the holes and pump the fluid into all parts of the basement floors as well as the basement walls. Part of the basement was used as a basement apartment. Senske informed Schlemeyer that the floors should be taken up in the apartment and the cement flooring under the wood floors should be treated in the same manner as the remainder of the basement. Schlemeyer did not care to go to the expense of tearing up the floors to do this and therefore this portion of the basement was not treated.

"Senske also told Schlemeyer even though the job were done completely, including treating the portion of the basement which was occupied by the apartment, to be sure of success, it would be necessary to make inspections regularly for a period of a year. Until these inspections were made for this period of time the success of the process could not be determined. Considering the job was not completed as mentioned, Senske would give Schlemeyer no assurance of success and advised him that he would make no guarantee under the circumstances."

No error has been assigned to the above findings of fact. Consequently, they will be considered as the established facts of the case. *Lewis v. Scott* (1959), 54 Wn. (2d) 851, 341 P. (2d) 488. The pattern thus established is hardly compatible with the Schlemeyers' claim that they had no reason to believe that their efforts to remedy the termite condition were not completely successful.

The Schlemeyers urge that, in any event, as sellers, they had no duty to inform the Obdes of the termite condition. They emphasize that it is undisputed that the purchasers asked no questions respecting the possibility of termites. They rely on a Massachusetts case involving a substantially similar factual situation, *Swinton v. Whitinsville Sav. Bank* (1942), 311 Mass. 677, 42 N. E. (2d) 808, 141 A. L. R. 965. Applying the traditional doctrine of *caveat emptor*—namely, that, as between parties dealing at arms length (as vendor

and purchaser), there is no duty to speak, in the absence of a request for information—the Massachusetts court held that a vendor of real property has no duty to disclose to a prospective purchaser the fact of a latent termite condition in the premises.

■ Without doubt, the parties in the instant case were dealing at arms length. Nevertheless, and notwithstanding the reasoning of the Massachusetts court above noted, we are convinced that the defendants had a duty to inform the plaintiffs of the termite condition. In *Perkins v. Marsh* (1934), 179 Wash. 362, 37 P. (2d) 689, a case involving parties dealing at arms length as landlord and tenant, we held that,

"Where there are concealed defects in demised premises, dangerous to the property, health or life of the tenant, which defects are known to the landlord when the lease is made, but unknown to the tenant, and which a careful examination on his part would not disclose, it is the landlord's duty to disclose them to the tenant before leasing, and his failure to do so amounts to a fraud."

We deem this rule to be equally applicable to the vendor-purchaser relationship. See 15 Tex. Law Review (December 1936) 1, 14-16, Keeton: *Fraud—Concealment and Non-Disclosure*. In this article Professor Keeton also aptly summarized the modern judicial trend away from a strict application of *caveat emptor* by saying:

"It is of course apparent that the content of the maxim 'caveat emptor,' used in its broader meaning of imposing risks on both parties to a transaction, has been greatly limited since its origin. When Lord Cairns stated in *Peek v. Gurney* that there was no duty to disclose facts, however morally censurable their non-disclosure may be, he was stating the law as shaped by an individualistic philosophy based upon freedom of contract. It was not concerned with morals. In the present stage of the law, the decisions show a drawing away from this idea, and there can be seen an attempt by many courts to reach a just result in so far as possible, but yet maintaining the degree of certainty which the law must have. The statement may often be found that if either party to a contract of sale conceals or suppresses a material fact which he is in good faith bound to disclose then his silence is fraudulent.

"The attitude of the courts toward non-disclosure is undergoing a change and contrary to Lord Cairns' famous remark it would seem that the object of the law in these cases should be to impose on parties to the transaction a duty to speak whenever justice, equity, and fair dealing demand it." (page 31.)

█ A termite infestation of a frame building, such as that involved in the instant case, is manifestly a serious and dangerous condition. One of the Schlemeyers' own witnesses, Mr. Hoefer, who at the time was a building inspector for the city of Spokane, testified that " . . . if termites are not checked in their damage, they can cause a complete collapse of a building, . . . they would simply eat up the wood." Further, at the time of the sale of the premises, the condition was clearly latent—not readily observable upon reasonable inspection. As we have noted, all superficial or surface evidence of the condition had been removed by reason of the efforts of Senske, the pest control specialist. Under the circumstances, we are satisfied that "justice, equity, and fair dealing," to use Professor Keeton's language, demanded that the Schlemeyers speak—that they inform prospective purchasers, such as the Obdes, of the condition, regardless of the latter's failure to ask any questions relative to the possibility of termites.

█ Error has been assigned to the trial court's finding that Mrs. Schlemeyer knew of the termite condition and participated with her husband in the sale to the Obdes. However, this assignment of error has not been argued in the appeal brief. Thus, it must be deemed to have been abandoned. *Winslow v. Mell* (1956), 48 Wn. (2d) 581, 295 P. (2d) 319, and cases cited therein.

█ Schlemeyers' final contentions, relating to the issue of liability, emphasize the Obdes' conduct after they discovered the termite condition. Under the purchase agreement with the Schlemeyers, the Obdes paid $5,000 in cash, and gave their promissory note for $2,250 to the Schlemeyers. In addition, they assumed the balance due on the installment contract, under which the Schlemeyers had previously acquired the property from Ayars. This amounted to $34,750.

After they discovered the termites (some six weeks subsequent to taking possession of the premises in November 1954), the Obdes continued for a time to make payments on the Ayars contract. They then called in Senske to examine the condition—not knowing that he had previously worked on the premises at the instance of the Schlemeyers. From Senske the Obdes learned for the first time that the Schlemeyers had known of the termite infestation prior to the sale. Obdes then ceased performance of the Ayars contract, and allowed the property to revert to Ayars under a forfeiture provision in the installment contract.

The Schlemeyers contend that by continuing to make payments on the Ayars contract after they discovered the termites the Obdes waived any right to recovery for fraud. This argument might have some merit if the Obdes were seeking to rescind the purchase contract. *Salter v. Heiser* (1951), 39 Wn. (2d) 826, 239 P. (2d) 327. However, this is not an action for rescission; it is a suit for damages, and thus is not barred by conduct constituting an affirmance of the contract. *Salter v. Heiser, supra.*

■ Contrary to the Schlemeyers final argument relative to the question of liability, the Obdes' ultimate default and forfeiture on the Ayars contract does not constitute a bar to the present action. The rule governing this issue is well stated in 24 Am. Jur. 39, Fraud and Deceit, § 212, as follows:

"Since the action of fraud or deceit in inducing the entering into a contract or procuring its execution is not based upon the contract, but is independent thereof, although it is regarded as an affirmance of the contract, it is a general rule that a vendee is entitled to maintain an action against the vendor for fraud or deceit in the transaction even though he has not complied with all the duties imposed upon him by the contract. His default is not a bar to an action by him for fraud or deceit practiced by the vendor in regard to some matter relative to the contract. . . ."

See, also, Annotation, 74 A. L. R. 169; *cf. Conaway v. Co-Operative Homebuilders* (1911), 65 Wash. 39, 117 Pac. 716.

For the reasons hereinbefore set forth, we hold that the trial court committed no error in determining that the

respondents (Obdes) were entitled to recover damages against the appellants (Schlemeyers) upon the theory of fraudulent concealment. However, there remains the question of the proper amount of damages to be awarded. The trial court found that,

" . . . because of the termite condition the value [of the premises] has been reduced to the extent of $3950.00 and the plaintiffs have been damaged to that extent, and in that amount."

As hereinbefore noted, judgment was thereupon entered for the respondents in that amount.

The appellants concede that the measure of damages in a case of this type is the difference between the actual value of the property and what the property would have been worth had the misrepresentations been true. *Salter v. Heiser, supra*; and cases cited therein. However, they urge that the only evidence introduced to show the diminution in value of the premises on account of the termite condition—namely, the testimony of one Joseph P. Wieber—was incompetent. Wieber qualified as an expert witness on the basis of substantial experience as a realtor and appraiser. He examined the premises in question, and estimated that the termite condition had reduced the value of the property by some thirty per cent. Applying this estimate to an assumption (as posed in a hypothetical question propounded by respondents' counsel) that the property had been purchased twice during the year 1954 by persons who were unaware of the termite condition for approximately $40,000, Wieber rendered an opinion that the actual value of the premises (taking into account the termite condition) was about $25,000.

Appellants' sole objection to Wieber's testimony is based upon a claim that the facts (two purchases in 1954 for approximately $40,000, by persons who were unaware of the termite condition) supporting the hypothetical question were never supplied. We find no merit in this claim. The record fully discloses the two purchases in question: namely, the Obdes' purchase from the Schlemeyers in November

1954; and the Schlemeyers' purchase from Ayars in April 1954.

█ The judgment awarding damages of $3,950 is well within the limits of the testimony in the record relating to damages. The Obdes have not cross-appealed. The judgment of the trial court should be affirmed in all respects. It is so ordered.

WEAVER, C. J., ROSELLINI, and FOSTER, JJ., concur.

HILL, J., concurs in the result.

October 19, 1960. Petition for rehearing denied.

