[No. 1250-1.    Division One—Panel 2.    March 5, 1973.]

MICHAEL J. GOLDFARB et al., *Appellants*, v. NORMAN E. DIETZ
et al., *Respondents*.

*Stern, Gayton, Neubauer & Brucker* and *Michel P. Stern,* for appellants.

*W. L. Delbridge,* for respondents.

HOROWITZ, J.—The issues here concern the nature of obligations created by a real estate contract and the vendee's right to rescind that contract for nondisclosure by the vendor of the status of the real property with respect to the applicable local zoning and building code requirements.

The findings are undisputed and no statement of facts has been filed. The findings show the following as the facts of the case. Defendants Dietz originally acquired the property involved under a real estate installment contract for investment and income purposes in 1966. The property when purchased was improved with a 2-story frame dwell-

ing and five independent frame cottages. Subsequently, defendant husband was informed the property was zoned for single-family residency. Because of the nature of the improvements on the property, he did not believe the information would apply. He was an experienced carpenter and proceeded to make major and minor repairs, alterations and modifications to the improvements. He was generally familiar with the King County building code, but at no time did he obtain a building permit. The court found that such a permit was required "for certain repairs."

In the fall of 1969, defendants advertised the property for sale. Plaintiff Goldfarb saw the advertisement. He was then engaged in another business, but he was also a contract purchaser of two apartment house properties in Seattle and was interested in acquiring an additional investment in income-producing property. Both plaintiff and his employee, Schwartz, made a physical inspection of the property and "were aware of the nature and character of the investment, to-wit, that it was an older complex . . ." Schwartz conferred with Dietz and they discussed the economics of the property. During their conference, Dietz explained that during his ownership he had "made repairs to the subject premises." The question of zoning and building requirements as they affected the property was not discussed, nor did it arise. Dietz did not "reveal to Schwartz any information relating to his investigation of zoning . . ." Neither Goldfarb nor Schwartz had any knowledge of any existing violations of either the King County building code or the King County zoning code, and the court made no finding of specific knowledge by Dietz that the improvements on the property failed to comply with either the zoning or building codes of King County.

On November 7, 1969, Goldfarb and Schwartz executed the real estate contract here involved. As partners they operated the property for several months. Schwartz then sold his interest to plaintiffs Mesher. On May 15, 1970, a fire occurred on the property substantially destroying the 2-story frame dwelling. In late May 1970, the King County

building department made a physical inspection of the entire property. The inspection revealed that none of the single units could pass the building inspection because of the lack of airspace, the height of the buildings, lack of foundations, and building code violations, including those related to plumbing and wiring. Plaintiffs were further informed that the two building lots upon which the improvements were located could qualify only for a single-family residential zoning, and that the 2-story frame building had been converted into a 3-family residence. Investigation showed "that prior to the fire, the property would have come under a legal nonconforming status, but once the fire took place, the property became illegal and the buildings would have to be condemned." Plaintiffs were accordingly informed by the King County building department that they could not rebuild the premises to its former condition.

In June 1970 plaintiffs paid the installments owing up to September 30 on their real estate contract to Dietz; and, in July 1970, they made their last payment on the underlying real estate contract between defendant Dietz and their vendor. In October 1970 plaintiffs notified defendants by mail of the former's intention to rescind. Defendants refused the demand for rescission, claiming the unpaid purchase price. This litigation followed. From the judgment in favor of the defendants for the unpaid purchase price, plaintiffs appeal.

Plaintiffs first contend defendants were not entitled to judgment because the latter could not tender a marketable title to the real property after the fire, the property being encumbered both by building code and zoning law violations. The trial court held, over plaintiffs' objection, that the determining date of marketable title was the date of closing and that, as of the date of closing, defendants' title was marketable. The provisions of the real estate contract are not set forth in the findings. Defendants, however, rely on a provision of the real estate contract, the original of which has been filed in this court. Plaintiffs have made no motion to strike it from the appeal record, and in their

reply brief argue the merits of the assignment of error as if the contract is properly before us.

The deed called for in the contract is "a statutory warranty deed to said real estate, . . . free of encumbrances except any that may attach after date of closing through any person other than the seller . . ." At the date of closing, which was prior to the fire, "[t]he investigation revealed that prior to the fire, the property would have come under a legal nonconforming status . . ." So far as concerns a zoning law violation, there was none at the date of closing and Dietz' title was, therefore, a marketable one.

Nor can it be claimed that the zoning law prohibition against restoration of improvements following destruction by fire, which became applicable subsequent to the date of closing, is an encumbrance of which vendees can complain. A zoning law in itself, as distinguished from a zoning law violation, is not an encumbrance. *Hall v. Risley*, 188 Ore. 69, 213 P.2d 818 (1950); *Miller v. Milwaukee Odd Fellows Temple*, 206 Wis. 547, 240 N.W. 193 (1932); *Lincoln Trust Co. v. Williams Bldg. Corp.*, 229 N.Y. 313, 128 N.E. 209 (1920); 4 H. Tiffany, *Real Property* § 1005, at 141 (3d ed. 1939); 7 G. Thompson, *Real Property* § 3183, at 290 (1962). Furthermore, paragraph (4) of the real estate contract provides in part:

> The purchaser assumes all hazards of damage to or destruction of any improvements now on said real estate or hereafter placed thereon, and of the taking of said real estate or any part thereof for public use; and agrees that no such damage, destruction or taking shall constitute a failure of consideration.

Under paragraph (4) plaintiff assumed the risk of loss by fire, and that loss included that resulting from the application of the zoning law which prevented the restoration of the improvements following the fire.

Plaintiffs rely on *Ashford v. Reese*, 132 Wash. 649, 233 P. 29 (1925), to support their claim that risk of loss remains with the vendor pending delivery of legal title. In view

both of paragraph (4) of the contract and the nature of the deed required to be furnished, the doctrine of *Ashford v. Reese, supra,* is inapplicable. In any case, that doctrine "has been whittled away until nothing remains." *Windust v. Department of Labor & Indus.,* 52 Wn.2d 33, 37, 323 P.2d 241 (1958); *In re Estate of Verbeek,* 2 Wn. App. 144, 152, 467 P.2d 178 (1970). *See Meltzer v. Wendell-West,* 7 Wn. App. 90, 95, 497 P.2d 1348 (1972).

So far as building law violations are concerned, plaintiffs are precluded from relying upon them as prohibited encumbrances by virtue of paragraph (3) of the real estate contract. It reads:

> The purchaser agrees that full inspection of said real estate has been made and that neither the seller nor his assigns shall be held to any covenant respecting the condition of any improvements thereon nor shall the purchaser or seller or the assigns of either be held to any covenant or agreement for alterations, improvements or repairs unless the covenant or agreement relied on is contained herein or is in writing and attached to and made a part of this contract.

The real estate contract contains neither a covenant nor an agreement requiring the seller to remedy any defect in the improvements.

Plaintiffs argue there is a failure of consideration here because, following the fire and inability to restore, they failed to receive what they bargained for, namely, an investment in income-producing property. The parties bargained for the purchase and sale of specific real property without a warranty that the property would be or remain an investment in income-producing property. Plaintiffs' hopes, expectations or reasons for acquiring the property were not part of the consideration described in the contract. Furthermore, paragraph (4) of the real estate contract required the purchasers to bear the "hazards of damage to or destruction of any improvements," and expressly provided that such damage or destruction should not "constitute a failure of consideration." The hazard described

included the consequences of fire with resulting inability to restore the improvements damaged.

■ Plaintiffs finally contend the contract should be rescinded for mutual mistake. They argue that the defendant Norman E. Dietz was "generally familiar with the contents of the King County Building Code" and "experienced in all phases of remodeling and reconstruction, and had, on occasion, been involved in obtaining building permits for the construction of homes." They then claim that Dietz should have known of the zoning law requirement preventing the restoration of the improvements in the event of destruction, and that he should have informed Goldfarb and Schwartz of that requirement. For support of their position, plaintiffs particularly rely upon *Sorrell v. Young*, 6 Wn. App. 220, 491 P.2d 1312 (1971), published subsequent to the filing of appellants' brief.

Under certain circumstances, even as between a vendor and vendee dealing at arm's length, the vendor may come under a duty to disclose a material fact likely to affect the judgment of a prospective vendee as to whether or not the latter should purchase the property. *See Obde v. Schlemeyer*, 56 Wn.2d 449, 353 P.2d 672 (1960) (termite infestation), noted in 36 Wash. L. Rev. 202 (1961); *Ikeda v. Curtis*, 43 Wn.2d 449, 261 P.2d 684 (1953) (prostitution as source of earnings). The duty to disclose a material fact is, however, to be distinguished from a duty to disclose a rule of law such as a zoning law or building code. It may be that a vendee should not be charged with knowledge of a fact not apparent. A rule of law, however, is something else again. *See Flemetis v. McArthur*, 119 Utah 268, 226 P.2d 124, 126 (1951). Furthermore, knowledge of a rule of law such as a zoning law or building code is within the power of a vendee to obtain before he makes a proposed purchase of real estate. It is conceivable that a vendor has a duty to disclose to a prospective vendee a rule of law known to him if there exists a fiduciary relationship between them. We need not determine that matter, however, because in the instant case there is no claim or finding that there existed

between the vendor and vendee anything other than an arm's length relationship.

In any event, even in cases involving the duty to disclose a material fact, certain requirements must be met. Thus, in *Sorrell v. Young, supra,* relied on by plaintiffs and involving a duty to disclose that the land proposed to be sold was filled land, the court said:

> We conceive the essential "elements" in proof of constructive fraud by nondisclosure of the existence of a land fill to be: (1) a vendor, knowing that the land has been filled, fails to disclose that fact to a purchaser of the property, and (2) the purchaser is unaware of the existence of the fill because either he has had no opportunity to inspect the property, or the existence of the fill was not apparent or readily ascertainable, and (3) the value of the property is materially affected by the existence of the fill.

6 Wn. App. at 225. These rules are supported by the rationale of prior Washington cases, including *Obde v. Schlemeyer, supra, Ikeda v. Curtis, supra,* and *Perkins v. Marsh,* 179 Wash. 362, 37 P.2d 689 (1934).

In the instant case, there is neither an express nor necessarily implied finding that the vendors knew of the zoning law provision that prevented restoration of improvements occupying a "legal nonconforming status" following their destruction by fire. Nor is there an express or implied finding that, aside from the failure to take out a permit, the improvements were known by defendants Dietz to be in violation of the King County building code in the respects later discovered by the plaintiffs through an inspection by the King County building department. More important, there is no express or implied finding that the building violations or the potential application of the zoning law following the fire were matters of which the vendees were unaware because they had "no opportunity to inspect the property," or were matters "not apparent or readily ascertainable."

Here both Goldfarb and Schwartz made a physical inspection of the property and discovered it was "an older

complex." Unlike the facts in *Sorrell v. Young, supra,* the purchasers knew from paragraph (3) of the proposed real estate contract that they were being asked to purchase the property on what was in effect an "as is" basis. Proposed paragraph (3) served the purpose of a warning, and put them on notice that it was up to the vendees to satisfy themselves as to whether the improvements conformed to proper building standards and requirements so as to fulfill their purpose to obtain an income-producing investment. In the presence of such a warning the matter should have been pursued. There was nothing to prevent Messrs. Goldfarb, an experienced businessman and apartment house investor, and his employee Schwartz, acting prudently, from inquiring of the defendant whether he knew of any possible building violations or knew of the present or future zoning law status of the property. Similarly, there was nothing to prevent the vendees from making inquiry of the King County building department concerning both building and zoning matters as they affected or might affect the property. There is no claim that either course was not practicable. There is also no claim that the defendants affirmatively misrepresented the building code or zoning law status of the property, or even made a misleading statement concerning these matters. These matters were not discussed. Accordingly, whether or not under other circumstances there is a duty to disclose either a material fact or a rule of law, in the instant case the duty did not arise if only because the vendees actually inspected the property, were put on notice that they were acquiring the improvements on an "as is" basis, and the undisclosed matters of which they complained were "readily ascertainable."

The judgment is affirmed.

WILLIAMS and CALLOW, JJ., concur.