143 P.3d 885 (2006)
Fred A. ROSS and Ursula B. Ross, husband and wife, Appellants,
v.
TICOR TITLE INSURANCE COMPANY, a California corporation doing business in Clallam County, State of Washington, Appellant, and
John F. Kirner and "Jane Doe" Kirner, husband and wife, Respondents, and
Clallam Title Company, a Washington corporation, Defendant.
No. 32589-6-II.
Court of Appeals of Washington, Division 2.
October 3, 2006.
*886 Harry Holloway, III, Attorney at Law, Port Townsend, WA, Gregory Louis Ursich, Linville Ursich PLLC, Seattle, WA, for Appellants.
David V. Johnson, Johnson Rutz & Tassle, Port Angeles, WA, Alan Bradford Hughes, Alan B. Hughes PS, Seattle, WA, for Respondents.
ARMSTRONG, J.
¶ 1 Fred and Ursula Ross and Ticor Title Insurance Company appeal a summary judgment dismissing their claims against John Kirner for breach of contract, fraud, and misrepresentation. The claims stemmed from Kirner's sale of property to the Rosses, a sale that Ticor insured. The Rosses and Ticor contend that Kirner should have disclosed that he burdened the property with two easements while the sale was pending. Kirner counters that because the final deed listed the two easements, the initial purchase agreement merged into the closing documents, barring the Rosses' and Ticor's claims. Because the merger doctrine does not apply where a seller's misrepresentations induced the buyers to enter into the purchase agreement, we reverse the summary judgments and remand for further proceedings.

FACTS
¶ 2 In February 1998, John F. Kirner[1] signed a written agreement to sell real property he owned in Clallam County to Fred and Ursula Ross. The parties agreed to use Clallam Title Company for escrow services, to obtain title insurance from Ticor,[2] and to close on April 27, 1998.
¶ 3 Kirner previously owned the land immediately east and west of the property he sold to the Rosses. The Strait of Juan de Fuca borders the property on the north. A 60-foot-wide easement bisects the Ross property and serves as access to property west of the Rosses' parcel. Kirner deeded the property west of the Rosses' parcel to his son in 1975. He claims that his son's property had three terraces and that in the deed to his son, he created easements across the north, middle, and south of the Rosses' property to allow his son access to each terrace. Kirner testified that "[o]ver the years [he] graded . . . logging roads in each of the terraces to provide access [to both his son's and the Rosses' property] and to allow removal of logged trees." Clerk's Papers (CP) at 245. Anyone visiting the property could clearly see the logging roads.
¶ 4 Shortly after the parties signed the agreement, Paulette Waldron, a Clallam escrow officer, sent a packet of closing documents, including a proposed deed and a preliminary *887 commitment for title,[3] to the Rosses. Fred Ross expressed concerns regarding the specific language of the Declaration of Easements, Covenants, Conditions, and Restrictions (CC & R) referred to in the proposed statutory warranty deed and closing documents, so he and Kirner agreed to amend the CC & R language. Waldron then sent the amended CC & R's to the Rosses, which the Rosses approved and returned to Waldron.
¶ 5 Some time before the Rosses offered to purchase the property, Kirner asked Dave Cummins to survey the logging roads' location across the Rosses' property and the lot to the east of the Ross lot. Cummins's survey crew mapped the visible roads and recorded the survey on March 24, 1998, after Kirner and the Rosses signed their initial agreement but before the closing date. The survey map shows the roads as two 15-foot-wide easements extending in an east-to-west fashion across the lots; one over the northern portion and one over the southern portion of the two lots. Kirner did not consult the Rosses, his realtor, or Waldron before arranging for Cummins to record the new survey map. Fred Ross testified that neither Kirner nor anyone from Clallam told him about the new easements despite the fact that the contract provided that the parties could not modify the agreement absent written consent of all parties.
¶ 6 Shortly after Cummins recorded the new survey map, a Clallam title examiner prepared, on Ticor's behalf, a supplemental report to the second preliminary title commitment and sent the report to Waldron. This report excepted from the proposed title insurance policy: "[E]asement[s] for ingress and egress ... recorded on March 24, 1998." CP at 263. Upon receiving the supplemental report to the second preliminary title commitment, Waldron added the language "[e]asements for ingress and egress recorded on March 24, 1998" to the proposed statutory warranty deed and sent a copy of the deed to the Rosses.[4] CP at 290.
¶ 7 This deed contained both the modified CC & R terms and the language regarding the easements recorded on March 24, 1998. But the deed did not call special attention to the fact that it differed from the first deed contained in the original packet of closing documents Waldron had sent to the Rosses. Kirner signed the statutory warranty deed, and the parties closed the transaction and recorded the deed on April 15, 1998. Clallam transferred the purchase price from escrow to Kirner.
¶ 8 The Rosses built a house and made other improvements to the property. Fred Ross claims that several years later, during a conversation with his neighbor, he learned that the two easements existed across his property.
¶ 9 The Rosses sued Clallam Title, Ticor, and Kirner for damages. They arbitrated their claims against Ticor and the arbitrator concluded that Ticor's policy covered the easements and he awarded the Rosses $18,783 for the diminution in value the two easements caused to their property. The arbitrator also awarded the Rosses attorney fees expended in prosecuting their action against Ticor. The Rosses subsequently stipulated to dismiss all remaining claims against Ticor and settled with Clallam Title. They then amended their complaint against Kirner, seeking (1) to rescind the contract, (2) interest on the contract price, (3) damages for the improvements they made to the property, and (4) reimbursement for their costs and attorney fees.
¶ 10 Ticor, as the Rosses' subrogee under the title insurance policy, cross-claimed against Kirner for fraud, negligent misrepresentation, and breach of contract.
¶ 11 The trial court granted Kirner's summary judgment motion, reasoning that the *888 merger doctrine rendered irrelevant Kirner's failure to disclose the new easements because the deed, which Fred Ross signed, reported the easements; accordingly, the Rosses could not assert that they did not know about the easements. The court also awarded Kirner reasonable attorney fees of $18,172.25 against the Rosses and $16,725.25 against Ticor, whom the court held jointly and severally liable to Kirner for the fees.

ANALYSIS

I. STANDARD OF REVIEW
¶ 12 We review a summary judgment de novo. Osborn v. Mason County, 157 Wash.2d 18, 22, 134 P.3d 197 (2006) (citing Denaxas v. Sandstone Court of Bellevue, L.L.C., 148 Wash.2d 654, 662, 63 P.3d 125 (2003)). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c) We construe the evidence in the light most favorable to the nonmoving party. Osborn, 157 Wash.2d at 22, 134 P.3d 197 (citing Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998)).

II. MERGER
¶ 13 A real estate purchase and sale agreement's provisions merge into the deed upon execution of the deed. Black v. Evergreen Land Developers, Inc., 75 Wash.2d 241, 248, 450 P.2d 470 (1969) (citing Davis v. Lee, 52 Wash. 330, 100 P. 752 (1909)). This rule recognizes the parties' rights to change the terms of their contract at any time before performance. Brown v. Johnson, 109 Wash.App. 56, 59, 34 P.3d 1233 (2001) (citing Barber v. Peringer, 75 Wash. App. 248, 251, 877 P.2d 223 (1994)). The execution, delivery, and acceptance of a deed varying from the terms of the antecedent contract amends the original contract. Snyder v. Roberts, 45 Wash.2d 865, 871, 278 P.2d 348 (1955) (citing City of Bend v. Title & Trust Co., 134 Or. 119, 289 P. 1044 (1930)). The deed language then generally fixes the parties' rights. Snyder, 45 Wash.2d at 871, 278 P.2d 348 (citations omitted).
¶ 14 The rule, however, does not apply to actions based on fraud, misrepresentation, or mistake. See Black, 75 Wash.2d at 248, 450 P.2d 470 (citing Becker v. Lagerquist Bros., Inc., 55 Wash.2d 425, 348 P.2d 423 (1960)); Davis, 52 Wash. at 331, 100 P. 752; see also Brown, 109 Wash.App. at 60, 34 P.3d 1233 (citing Davis, 52 Wash. at 331, 100 P. 752). Where the seller contracts to sell land, fails to furnish title contemplated in the contract upon closing, and has assumed an attitude of owning land that he has no title to convey, his failure to perform constitutes an actionable misrepresentation. Davis, 52 Wash. at 338, 100 P. 752.
¶ 15 The Rosses and Ticor argue that Kirner misrepresented or fraudulently concealed the actual state of the title to the property. They argue that when Kirner and the Rosses first agreed on a sale, Kirner showed the Rosses a 1993 survey,[5] which did not show the two new easements. They point out that although Kirner had already arranged for Cummins to survey and record the two new easements, he did not inform the Rosses until Clallam Title sent the form deed to the Rosses.
¶ 16 Every contract carries with it an implied covenant of good faith and fair dealing that obligates the parties to cooperate with one another so that each may obtain the full benefit of performance. Cavell v. Hughes, 29 Wash.App. 536, 539, 629 P.2d 927 (1981) (citing Miller v. Othello Packers, Inc., 67 Wash.2d 842, 410 P.2d 33 (1966)). Under certain circumstances, even as between a seller and buyer dealing at arm's length, the seller may have a duty to disclose a material fact likely to affect a prospective buyer's judgment as to whether the buyer should purchase the property. Goldfarb v. Dietz, 8 Wash.App. 464, 469, 506 P.2d 1322 (1973) (citing Obde v. Schlemeyer, 56 Wash.2d 449, 353 P.2d 672 (1960)).
*889 ¶ 17 In Obde, buyers bought a house that was infested with termites. Obde, 56 Wash.2d at 450, 353 P.2d 672. The sellers knew that the house had termite problems when they sold it; however, they never disclosed that fact to the buyers. Obde, 56 Wash.2d at 451, 353 P.2d 672. The sellers argued that the buyers never asked and that they had no duty to disclose the termite problems. Obde, 56 Wash.2d at 451, 353 P.2d 672. The court noted that at the time of sale, the defect was latent and not readily observable upon reasonable inspection. Obde, 56 Wash.2d at 453, 353 P.2d 672.
¶ 18 The court quoted with approval an article stating that "[i]n the present stage of the law, the decisions show a drawing away from [strict application of caveat emptor], and ... that if either party to a contract of sale conceals or suppresses a material fact which he is in good faith bound to disclose then his silence is fraudulent." Obde, 56 Wash.2d at 452, 353 P.2d 672 (quoting W. PAGE KEETON, FRAUDCONCEALMENT AND NON-DISCLOSURE, 15 Tex. L.Rev. 1, 14-16 (1936)). The court held that "justice, equity, and fair dealing" imposed on the sellers a duty to disclose the defect, regardless of whether the buyer asked questions relevant to the defect. Obde, 56 Wash.2d at 453, 353 P.2d 672.
¶ 19 Since the Obde and Goldfarb decisions, Washington has adopted the RESTATMENT (SECOND) OF TORTS § 551 (1977) as the standard for claims of negligent misrepresentation. Richland Sch. Dist. v. Mabton Sch. Dist., 111 Wash.App. 377, 385, 45 P.3d 580 (2002) (citing Havens v. C & D Plastics, Inc., 124 Wash.2d 158, 180, 876 P.2d 435 (1994)). Section 551 provides:
(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.
(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, ... (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and ... (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.
RESTATEMENT § 551, at 119.
¶ 20 Comment j, pertaining to section 551(2)(e), states that basic facts are those "assumed by the parties as a basis for the transaction itself" and those that go "to the basis, or essence, of the transaction, and [are] an important part of the substance of what is bargained for." RESTATEMENT § 551, at 123. Comment l under section 551(2)(e) says good faith and fair dealing may require disclosure in situations where the defendant knows that the other party, by reason of the "relation between them, the customs of the trade or other objective circumstances, is reasonably relying upon a disclosure of the unrevealed fact if it exists." RESTATEMENT § 551, at 124-25. The fact finder could easily conclude that two 15-foot-wide easements across the property would be material to the proposed sale and would, therefore, be an "important part" of what the parties bargained for, obligating Kirner to disclose under RESTATEMENT section 551(2)(e) his intent to further encumber the property.
¶ 21 Kirner's failure to disclose the additional easements amounts to negligent misrepresentation. "The elements of negligent misrepresentation are (1) a false statement (2) made to induce a business transaction (3) upon which the other party justifiably relies." Amtruck Factors v. Int'l Forest Prods., 59 Wash.App. 8, 18, 795 P.2d 742 (1990) (citing Controlled Atmosphere, Inc. v. Branom Instrument Co., 50 Wash.App. 343, 350-51, 748 P.2d 686 (1988)). Negligent omission of a material fact satisfies the first element of negligent misrepresentation. Amtruck Factors, 59 Wash.App. at 18, 795 P.2d 742.
*890 ¶ 22 The Rosses presented evidence that Kirner had already arranged to encumber the property with two new easements before the parties first agreed to the sale. Yet Kirner did not disclose this to the Rosses. Rather, he showed them a 1993 survey that does not contain the two new easements. The Rosses executed the purchase and sale agreement with the understanding that the 1993 survey accurately described the land. And the Rosses stated that they would not have purchased the property if they had known about the proposed easements.
¶ 23 In Flint v. Owl Land & Investment Co., 122 Wash. 401, 402, 210 P. 811 (1922), the seller of a particular lot assured buyers that he would restrict the surrounding lots to purely residential use. Flint, 122 Wash. at 402, 210 P. 811. The buyers entered into an agreement relying on the seller's representations, without which the buyer said he would not have purchased. Flint, 122 Wash. at 402, 210 P. 811. Neither the real estate contract nor the deed reflected the discussed restrictions. Flint, 122 Wash. at 403, 210 P. 811. When the buyers observed a "shack" on an adjoining property, they brought an action against the seller to enforce the restrictions. Flint, 122 Wash. at 403, 210 P. 811.
¶ 24 The trial court dismissed the buyers' claim on summary judgment, concluding "that all prior and contemporaneous oral agreements and representations between the parties became merged in the formal written real estate contract and deed subsequently delivered." Flint, 122 Wash. at 404, 210 P. 811. In reversing and remanding for trial, our Supreme Court held that the trial court's ruling disregarded the policy behind the merger doctrine. The court categorized the suit as one for fraud and deceit, rather than one for breach, and held that merger did not apply where the fraud and deceit induced the buyers to enter into the purchase agreement. Flint, 122 Wash. at 405, 210 P. 811.
¶ 25 In Nelson v. Title Trust Co., 52 Wash. 258, 259, 100 P. 730 (1909), the parties entered into a temporary contract for purchase of a parcel of land after the seller showed the buyer the stakes representing the parcel's boundaries. The buyer then left town, and before he returned to sign the real estate contract, the seller re-staked the property as a smaller parcel. Nelson, 52 Wash. at 259, 100 P. 730. The seller also re-platted and sold property adjacent to the subject property that he had represented to the buyer as a proposed park. Nelson, 52 Wash. at 259, 100 P. 730. At the time the parties entered into the real estate contract, the seller had filed the new plat with the auditor. Nelson, 52 Wash. at 261, 100 P. 730. The contract stated that the buyer had examined the property "as at present platted and staked." Nelson, 52 Wash. at 261-62, 100 P. 730. The court held that the buyer could seek relief because the seller misled the buyer into signing the contract and the buyer had no natural reason to view the property again. Nelson, 52 Wash. at 262, 100 P. 730.
¶ 26 Flint and Nelson control. At the time the Rosses signed the contract, Kirner did not disclose that he had already arranged to further encumber the property. And the Rosses had no reason to believe the property differed from the 1993 survey. The property the Rosses ultimately received materially differed from the property they believed they purchased. The doctrine of merger does not apply where, as here, a seller's misrepresentations induced the buyers to enter into the purchase agreement. See Flint, 122 Wash. at 405, 210 P. 811; see also Nelson, 52 Wash. at 261-62, 100 P. 730.

III. ATTORNEY FEES ON SUMMARY JUDGMENT
¶ 27 The trial court awarded Kirner $18,172.25 in attorney fees and costs against the Rosses and $16,725.25 in attorney fees and costs against Ticor. The court based its award on a provision in the real estate purchase and sale agreement that stated, "The prevailing party shall be entitled to recover attorney's fees and costs in any action to enforce rights under this [a]greement." CP at 223. Because Kirner is no longer the prevailing party, we reverse the award of attorney fees and costs.
¶ 28 Reversed and remanded.
We concur: QUINN-BRINTNALL, C.J., and PENOYAR, J.
NOTES
[1] The record inconsistently identifies the defendant Kirner as John F. Kirner and John J. Kirner.
[2] Although the contract language states that Clallam Title was to provide title insurance, the record shows that Ticor provided the Rosses with title insurance in this transaction.
[3] A preliminary commitment is a preliminary showing of recorded easements, covenants, conditions, and restrictions on a particular piece of property at a specific date and time. Waldron said that in drafting the statutory warranty deed, she typically lists the property's legal description, drafts the conveyance language, and then writes "subject to:" and lists the easements, covenants, conditions, and restrictions expressed in the preliminary title commitment CP at 257.
[4] The parties dispute whether Waldron sent the second preliminary commitment report with this deed. Because the Rosses are the non-moving party, we accept their version of the facts.
[5] The easements at issue in this were not present on the 1993 survey. The easements did not appear on a recorded survey map until Cummins's March 24, 1998 survey.